*272
 
 Chief Judge Fuld.
 

 In this proceeding to confirm an award, the question posed is whether the obligation of the parties to abide by the provisions of a labor union’s constitution and by-laws, requiring the submission of disputes to arbitration, constitutes a “ written agreement ” between them, within the sense of CPLR 7501, to arbitrate their differences.
 

 The respondent, Willard Alexander, Inc., is a booking agent “ licensed ” by the American Federation of Musicians of the United States and Canada (AFM) to do business with that organization’s members. The appellant, Don Glasser, is an orchestra leader, who was a member of the AFM. In July of 1968, Alexander, at Glasser’s request, arranged for the latter to perform two six-week engagements at Roseland Dance City in Manhattan. As indicated on its “ booking slips ” which memorialized these arrangements, Alexander was to receive as a commission 10% of the total price paid to Glasser by Roseland.
 
 [1]
 
 Glasser opened the first of these engagements in June, 1969, and, shortly thereafter, Alexander sent him a bill for $3,000, representing its 10% commission to cover both bookings. Glasser refused to pay, whereupon Alexander requested the union’s international executive board to adjudicate its claim. In May, 1970, following arbitration proceedings in which the appellant Glasser did not participate, the board awarded Alexander the full amount claimed. Some months later, the court at Special
 
 *273
 
 Term, upon a motion by Alexander, confirmed the award.
 
 [2]
 
 A divided Appellate Division affirmed the resulting judgment (38 A D 2d 546) and the appeal is before us as of right (CPLR 5601, subd. [a]).
 

 Section 6 of article 9 of the union’s constitution and by-laws — captioned “ Claims and Arbitrations ” — requires that disputes “ arising out of ” contracts between members of the union and booking agents “ shall be heard, adjudicated and determined * * * only by the International Executive Board of [the AFM].” It further provides that a proceeding before the union’s executive board may be initiated “ upon the request or demand of any party.” The appellant Glasser necessarily assented to these rules, since it is well settled that, when a person becomes a member of a labor organization, or any other association, he thereby agrees, as a matter of law, to abide by the duly enacted provisions of its constitution and by-laws unless they are contrary to good morals or public policy or otherwise illegal. (See, e.g.,
 
 Machinists
 
 v.
 
 Gonzales,
 
 356 U. S. 617, 618;
 
 Maltese
 
 v.
 
 Dubinsky,
 
 304 N. Y. 450, 455;
 
 Nilan
 
 v.
 
 Colleran,
 
 283 N. Y. 84, 89;
 
 O’Keefe
 
 v.
 
 Local 463 of Assn. of Plumbers,
 
 277 N. Y. 300, 304;
 
 Polin
 
 v.
 
 Kaplan,
 
 257 N. Y. 277, 281;
 
 Fritsch
 
 v.
 
 Rarback,
 
 199 Misc. 356, 359.) As this court wrote in the
 
 O’Keefe
 
 case (277 N. Y. 300, 304,
 
 supra),
 
 “ The constitution and by-laws of the * * * union define the relations of the union and its members; the powers of the union officers and committees and the rights of the members. ’ ’ And, we note in addition, Glasser actually agreed in his written application for union membership, that he would “be bound” by that organization’s “Constitution [and] By-Laws.” The respondent Alexander also agreed to abide by the union’s arbitration rules embodied in article 9 when — in order to become ‘ ‘ licensed ’ ’ by the union — it signed a
 
 ‘'
 
 booking agent agreement ’ ’ with that body.
 

 In our view, the mutual obligation of the parties in the present case to observe the union’s arbitration provisions clearly constitutes, as between themselves, a “written agreement” to
 
 *274
 
 arbitrate their dispute within the meaning of CPLB 7501. Ample support for this conclusion is found in the cases.
 
 [3]
 
 In
 
 Merrill Lynch, Pierce
 
 ,
 
 Fenner & Smith
 
 v.
 
 Griesenbech
 
 (28 A D 2d 99, affd. 21 N Y 2d 688), for instance, the plaintiff and the defendant were members of the New York Commodity Exchange. Section 232 of that body’s by-laws required arbitration of any ‘ ‘ * claims, dispute, difference or controversy ’ ’ ’ between members ‘
 
 ‘ ‘
 
 arising out of any transaction in commodities made on the Exchange ’ ” (28 A D 2d, at p. 100). A dispute subsequently arose under a “ ‘ commodity account agreement ’ ” between the two, when the plaintiff, as the defendant’s broker, engaged in certain losing transactions on the London Metal Exchange and sought to saddle the defendant with the ensuing losses. The plaintiff brought an action for that purpose in the Supreme Court and the defendant promptly moved for an order dismissing the complaint and compelling arbitration pursuant to subdivision (a) of CPLR 7503. As in the present case, the contract in
 
 Griesenbech
 
 out of which the dispute arose contained no agreement to arbitrate. However, and it is of high significance, the Appellate Division proceeded on the implicit and unchallenged assumption that there was a valid agreement to' arbitrate, since both parties, by virtue of their membership in the Exchange, had agreed to observe its rules concerning arbitration.
 
 [4]
 

 The
 
 Griesenbech
 
 case is indistinguishable in principle from the case now before us. The sole difference is that here only the appellant was compelled by
 
 virtue of his union membership
 
 to observe the union’s arbitration rules. It is, however, quite clear that the respondent was equally obligated to observe those rules
 
 *275
 
 because of the booking agent agreement which it had signed with the union. In short, each party was bound just as if
 
 both
 
 had been union members. It follows, therefore, that a valid agreement had been made to arbitrate their dispute.
 

 We have considered the other points advanced by the appellant and find them without substance. It is enough to say that his reliance on section 101 (subd. [a], par. [4]) of the Labor-Management Reporting and Disclosure Act (U. S. Code, tit. 29, § 411, subd. [a], par. [4]) as a ground for setting aside the award indicates a misreading of the statute and its purpose. That provision, as the House Committee Report accompanying the act makes clear (H. R. Rep., No. 741, 86th Cong., 1st Sess. 30 [1959]), was merely designed to protect the right of a union member to proceed in court against the union or its officers. Manifestly, the arbitration rules here in question in no way limit that right.
 

 The order appealed from should be affirmed, with costs.
 

 Judges Burke, Scileppi, Bergan, Breitel, Jasen and G-ibson concur.
 

 Order affirmed.
 

 [1]
 

 . In the two
 
 “
 
 engagement contracts ” relating to these scheduled performances which Glasser subsequently executed with Roseland Amusement Co., the orchestra leader acknowledged the booking services performed by Alexander by clearly designating the latter under his own signature on each contract as his “ Booking Agent.” Each contract, we note in passing, incorporated by reference the “By-Laws, Rules and Regulations of the” AFM. Thus, each provided — under that section of the contract entitled “ Additional Terms and Conditions” — that “there are incorporated into and made part of this agreement, as though fully set forth herein, all of the By-Laws, Rules and Regulations of the Federation”. Following their execution, the union stamped both contracts “Approved”.
 

 [2]
 

 . Prior to Alexander’s application in the Supreme Court, Glasser brought an action in the Federal District Court
 
 against the union
 
 (under section 102 of title I of the Labor-Management Exporting and Disclosure Act of 1959) for, among other things, a judgment “ vacating and annulling ” the award. That action is still pending.
 

 [3]
 

 . See, e.g.,
 
 Merrill Lynch, Pierce, Fenner & Smith
 
 v.
 
 Griesenbech,
 
 28 A D 2d 99, affd. 21 N Y 2d 688;
 
 Matter of Ghiron (Mayr),
 
 19 A D 2d 54, 55;
 
 Hutton & Co.
 
 v.
 
 Bokelmann,
 
 56 Misc 2d 910;
 
 Coenen
 
 v.
 
 Pressprich & Co.,
 
 453 F. 2d 1209, 1211 — 1212;
 
 Axelrod & Co.
 
 v.
 
 Kordich, Victor & Neufeld,
 
 451 F. 2d 838, 840-841, affg. 320 F. Supp. 193, 194; cf.
 
 Brown
 
 v.
 
 Gilligan, Will & Co.,
 
 287 F. Supp. 766, 769-770.
 

 [4]
 

 . Indeed, the sole issue in that case was whether the “ scope ” of the agreement to arbitrate covered transactions not only on the New York Commodity Exchange but on the London Metal Exchange as well. The Appellate Division decided that it did (28 A D 2d, at p. 103) and, accordingly, directed “that the parties proceed to arbitration” (28 A D 2d, at p. 104). As indicated, the Court of Appeals affirmed (21 N Y 2d 688,
 
 supra).