490 So.2d 964 (1986)
Fadel ELBADRAMANY, Appellant/Cross-Appellee,
v.
R. Douglas STANLEY, Appellee/Cross-Appellant.
No. 85-600.
District Court of Appeal of Florida, Fifth District.
May 22, 1986.
Rehearings Denied July 2, 1986.
Ronald A. Nour, Ormond Beach, for appellant/cross-appellee.
Dwight Chamberlin of Dunn, Smith, Withers & Hart, Daytona Beach, for appellee/cross-appellant.
Darryl M. Bloodworth, and Renee A. Roche of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando and John R. Linton and Laurene K. Janik, Chicago, Ill., for amicus curiae.
ORFINGER, Judge.
The principal issue in this case is whether or not there was an agreement between appellant and appellee to arbitrate future disputes between them. The trial court held that there was no such agreement and vacated the arbitration award. We disagree and reverse.
Both appellant and appellee are real estate brokers and are Realtor members of the Daytona Beach Board of Realtors, Inc. (Board). A dispute over a commission *965 arose between them and when they could not resolve it between themselves, appellant Elbadramany filed a complaint for arbitration with the Professional Standards Committee of the Board. The application for membership in the Board contains this statement:
In the event of my election, I agree to abide by the Code of Ethics of the NATIONAL ASSOCIATION OF REALTORS, and the Constitution, Bylaws, and Rules and Regulations of the above named Board, the State Association, and the National Association ...
Both Elbadramany and Stanley agreed to this by signing their respective applications for membership. Both parties reviewed and signed copies of the Board's by-laws. Article VI of the Bylaws of the Daytona Beach Area Board of Realtors, Inc., regarding Privileges and Obligations of members of the Board, provides:
(k) Professional disputes between REALTOR members or between firms, partnership, corporations or trusts with which a REALTOR member is associated, shall be settled through arbitration process as provided in ARTICLE VIII, ARBITRATION, rather than by recourse to other tribunals.
Professional disputes between REALTOR members and other members or non-members of the Board may be accepted for arbitration, at the discretion of the Professional Standards Committee, provided that both parties to such dispute agree in advance, in writing, to abide by the award, if any, and provided that any non-member shall agree to pay in advance such fee(s) as may be required by the Professional Standards Committee towards the expenses of the proceedings.
Both parties appeared at the arbitration hearing before the Professional Standards Committee. On the day of the hearing, Elbadramany signed a form entitled "Arbitration Agreement." This form was not provided to Stanley until after the hearing. Stanley participated in the hearing over objection[1] and refused to sign the "Arbitration Agreement" when it was finally provided to him. Following the committee's award to Elbadramany and its affirmance by the Board of Directors, Stanley filed a complaint in the circuit court to vacate the arbitration award. Elbadramany answered and sought confirmation of the award. After disposing of certain procedural issues raised by the parties (and not pertinent to this decision), the trial court held that there was no written agreement[2] between the parties by which they had agreed to submit to arbitration any controversy between them and vacated the award.
Stanley argues that the trial court correctly found that he did not agree to arbitrate any controversy between himself and Elbadramany and that there was no written agreement between these parties to arbitrate any such controversy. That contention overlooks his written agreement to abide by the code of ethics of the National Association and the constitution and bylaws of the Board, both of which specifically require that realtor members arbitrate disputes arising between themselves. *966 Stanley asserts, however, and the trial court apparently agreed, that the Board's by-laws make arbitration dependent on the signing of the agreement to arbitrate because of the language: "Professional disputes between Realtor members and other members or non-members may be accepted for arbitration ... provided that both parties to such dispute agree in advance, in writing, to abide by the award, if any ..." This is not a correct interpretation of the by-laws. The by-laws provide for eight different classifications of membership in the Board, only one of which is the classification of "Realtor." The quoted language refers to disputes between Realtor members on the one hand, and other classifications of members or non-members who would not have previously agreed to arbitrate disputes. Stanley's position ignores the opening paragraph of Article VI(k), supra, which requires that disputes between Realtor members shall be settled through arbitration. The language of the by-laws is clear and unambiguous.
The question remains then, whether there was an agreement between the parties to arbitrate future disputes within the meaning of section 682.02, Florida Statutes (1985). Arbitration agreements are valid and enforceable, and public policy favors arbitration as an alternative to litigation. Larry Kent Homes, Inc. v. Empire of America FSA, 474 So.2d 868 (Fla. 5th DCA 1985), rev. denied, Anderton v. Larry Kent Homes, Inc., 484 So.2d 7 (Fla. 1986). The constitution and by-laws of a voluntary association, when subscribed or assented to by the members, becomes a contract between each member and the association. Sult v. Gilbert, 148 Fla. 31, 3 So.2d 729 (1941). Although the specific question involved here has not been ruled on by an appellate court in Florida, other jurisdictions have addressed it. In Keith Adams & Associates, Inc. v. Edwards, 3 Wash. App. 623, 477 P.2d 36 (1970), under an arbitration statute virtually identical to the Florida statute, the court held that in applying for membership with the Tri-City Board of Realtors, Inc., both parties to the dispute agreed to conform to the by-laws of the Board which provided for the settlement of future disputes by arbitration and that their membership application constituted a sufficient agreement to submit future disputes to arbitration. See also Willard Alexander, Inc. v. Glasser, 31 N.Y.2d 270, 338 N.Y.S.2d 609, 290 N.E.2d 813 (1972), cert. denied, 410 U.S. 983, 93 S.Ct. 1505, 36 L.Ed.2d 179 (1973) (obligation of union members to abide by union's constitution and by-laws requiring submission of disputes to arbitration constituted, as between the members, a "written agreement" to arbitrate their dispute); 5 Am.Jur.2d, Arbitration and Award, § 11 (1962) (agreements to arbitrate future disputes include provisions in constitution, charters or by-laws of corporations or lodges which provide for arbitration of disputes arising thereunder, which provisions are construed as agreements on the part of members to arbitrate such disputes).
We hold, therefore, that a provision in the constitution, charter or by-laws of a voluntary association which requires that disputes between members be submitted to arbitration constitutes a binding agreement between such members to submit future disputes to arbitration within the meaning of section 682.02, Florida Statutes (1985), and that such an agreement existed between the parties here.
The trial court found that evidence submitted to the arbitration committee by Stanley was considered by the committee, and we see no basis for disturbing that ruling. Stanley's cross-appeal thus has no merit. Because no other basis has been demonstrated for vacating and not confirming the arbitration award, the final judgment vacating the award is reversed and the cause is remanded to the trial court with directions to confirm the arbitration award.
REVERSED and REMANDED.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] Stanley objected to the hearing and announced he would not sign any agreement to arbitrate. Elbadramany argues that the objection was not timely, but for the purpose of this opinion we assume, without deciding, that the objection was timely. However, Stanley's refusal to sign the form did not vitiate his prior agreement to submit claims to arbitration. While the form repeated the agreement, it added a provision which bound the participant to the decision of the committee and waived any right of appeal to the Board of Directors. Thus, the effect of Stanley's refusal to sign the form was to preserve his right to appeal the committee's decision to the Board of Directors, and this right was granted to him.
[2] Section 682.02, Florida Statutes (1985) provides, in pertinent part:

Two or more parties may agree in writing to submit to arbitration any controversy existing between them at the time of the agreement, or they may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof.