

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

MARCUS & MILLICHAP REAL ESTATE INVESTMENT SERVICES OF SEATTLE, INC., a California corporation )

Appellant,

v.

YATES, WOOD & MACDONALD, INC., a Washington corporation,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 73199-8-I

PUBLISHED OPINION

FILED: February 1, 2016

DWYER, J. — Forty-six years ago, this court set forth the principle that voluntary membership in a professional organization gives rise to a corresponding obligation to comply with that organization's bylaws.[1] Where those bylaws contain an agreement to arbitrate, this principle applies with equal force. Under such circumstances, a binding agreement to arbitrate is adequately evidenced by proof of membership in the organization; a signed agreement is not required. Notwithstanding the subsequent enactment of the uniform arbitration

---

[1] Keith Adams & Assoc., Inc. v. Edwards, 3 Wn. App. 623, 477 P.2d 36 (1970), disapproved of on other grounds by Godfrey v. Hartford Cas. Ins. Co., 142 Wn.2d 885, 16 P.3d 617 (2001).

act[2] (UAA), the rule enunciated by this court retains its viability. Thus, the trial court correctly applied this rule to the facts before it in determining that there exists a valid agreement to arbitrate the underlying dispute at issue herein. Accordingly, we affirm.

I

Marcus & Millichap Real Estate Investment Services of Seattle, Inc. (Marcus & Millichap) is a real estate brokerage firm with its principal offices located in Seattle. On July 31, 2014, Marcus & Millichap, through its agents Scott Morasch and Kellan Moll, executed an exclusive representation agreement with the Goetzinger Family LLP to sell the Ticino Apartments (the Property), located in Seattle. At this time, Yates, Wood & MacDonald, Inc. (Yates), a real estate brokerage and property management firm, was the Property's manager.

Following the execution of the exclusive representation agreement, Marcus & Millichap marketed the Property in-house to its list of potential buyers. It did not list the Property with any multiple listing service. In response to these marketing efforts, Marcus & Millichap received offers to buy the Property. As a result, the Goetzinger Family LLP accepted an offer to purchase the Property from the assignee of BriarBox LLC. On November 24, 2014, the sale of the property closed and Marcus & Millichap both earned and received a commission.

Marcus & Millichap and Yates are both voluntary members of the Commercial Broker's Association (CBA),[3] a member-owned trade association

---

[2] Ch. 7.04A RCW.
[3] Although Marcus & Millichap vaguely questioned its status as a CBA member before the trial court, its membership status is not seriously disputed in its briefing on appeal.

2

that provides commercial real estate multiple listing services to its members.

Section X.A of the CBA bylaws contains an arbitration provision requiring

arbitration of commission disputes arising among or between CBA members:

> A. <u>Duty to Arbitrate</u>. It is the duty of the members of this Association (and each so agrees) to submit all controversies involving commissions, between or among them to binding arbitration by the Association, rather then [sic] to bring a suit to law. The foregoing includes controversies which arose prior to one of the parties becoming a member.
>
> The term "commissions" as used above means commissions or fees arising from the real estate brokerage business as the same is now or in the future defined in RCW 18.85.010(1); together with interest and out-of-pocket costs or expenses related thereto. The terms shall include commissions or fees actually paid, as well as commissions or fees lost as a result of the acts of another member.
>
> Accordingly, no members may institute legal action involving such a controversy against any other member without the prior approval of the Board of Directors.

The applicability of this arbitration provision is the central issue on appeal.

On December 9, 2014, Yates, pursuant to the CBA bylaw arbitration

provision, initiated arbitration proceedings against Marcus & Millichap, seeking

one-half of the commission earned on the sale of the Property. Marcus &

Millichap answered Yates's arbitration complaint denying the allegations. It did

not, however, challenge the CBA's arbitral jurisdiction in its answer.

Nevertheless, before arbitration commenced, Marcus & Millichap filed a

complaint for declaratory judgment against Yates in the King County Superior

Court, alleging that no arbitration agreement between the parties existed. Before

substantial discovery had been conducted, Marcus & Millichap and Yates filed

---

Nonetheless, Marcus & Millichap's CBA membership status is discussed below. Yates's status as a CBA member is undisputed.

cross motions pursuant to RCW 7.04A.070, seeking to stay and compel the arbitration, respectively. The superior court, finding the existence of a valid agreement to arbitrate, granted Yates's motion to compel arbitration and dismissed the suit. Marcus & Millichap appeals.

II

Marcus & Millichap first contends that because its signed CBA membership application form has not been produced by either party, it is under no duty to arbitrate the underlying dispute. This is so, it asserts, because absent a signed membership application form, there is no evidence that Marcus & Millichap manifested assent to the CBA bylaws or to the arbitration agreement contained therein. We disagree.

Where the parties dispute the validity of an agreement to arbitrate, RCW 7.04A.070[4] directs the court to "proceed summarily to decide the issue." While no Washington court has squarely addressed the requirements of this "summary proceeding," courts in other jurisdictions have considered the issue in greater depth.[5] See, e.g., J.A. Walker Co. v. Cambria Corp., 159 P.3d 126 (Colo. 2007); Moffett v. Life Care Ctrs. of Am., 219 P.3d 1068 (Colo. 2009); Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266 (Tex. 1992). In J.A. Walker Company, the Colorado Supreme Court recognized that, pursuant to the Colorado UAA, the

---

[4] RCW 7.04A.070(2) provides:
On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue. If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate.

[5] Because the UAA instructs courts to consider "the need to promote uniformity of the law" when applying and construing the UAA, authority from other jurisdictions is instructive. RCW 7.04A.901.

determination of "the existence of an arbitration agreement is an expedited process that starts with the trial court considering 'affidavits, pleadings, discovery, and stipulations' submitted by the parties." 159 P.3d at 130 (quoting Jack B. Anglin Co., 842 S.W.2d at 269). "The court must then determine 'whether material issues of fact are disputed and, if such factual disputes exist, [it must] conduct[ ] an expedited evidentiary hearing to resolve the dispute.'" J.A. Walker Co., 159 P.3d at 130 (alterations in original) (quoting Haynes v. Kuder, 591 A.2d 1286, 1290 (D.C. 1991)). "Thus an evidentiary hearing only is necessary if 'the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence . . . .'" J.A. Walker Co., 159 P.3d at 130 (quoting Jack B. Anglin Co., 842 S.W.2d at 269). "If the material facts are undisputed, then the trial court can resolve the challenge on the record before it." J.A. Walker Co., 159 P.3d at 130 (citing Jack B. Anglin Co., 842 S.W.2d at 269).

This case authority properly describes the procedure envisioned by RCW 7.04A.070. Thus, both trial and appellate courts act properly by applying familiar summary judgment principles when the validity of an agreement to arbitrate is challenged under RCW 7.04A.070.

When reviewing an order granting summary judgment this court "perform[s] the same inquiry as the trial court." Owen v. Burlington N. & Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005) (citing Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 860, 93 P.3d 108 (2004)). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); see also Owen, 153 Wn.2d at 787.

In determining whether a genuine issue of material fact exists, we must "assume facts most favorable to the nonmoving party." Ruff v. County of King, 125 Wn.2d 697, 703, 887 P.2d 886 (1995) (citing Hartley v. State, 103 Wn.2d 768, 774, 698 P.2d 77 (1985)); Braegelmann v. County of Snohomish, 53 Wn. App. 381, 383, 766 P.2d 1137 (1989)). The nonmoving party "must set forth specific facts that sufficiently rebut the moving party's contentions" and "may not rely on speculation, argumentative assertions that unresolved factual issues remain, or in having its affidavits considered at face value." Seven Gables Corp. v. MGM/UA Entm't Co., 106 Wn.2d 1, 13, 721 P.2d 1 (1986) (citing Dwinnell's Cent. Neon v. Cosmopolitan Chinook Hotel, 21 Wn. App. 929, 587 P.2d 191 (1978)); see also Lane v. Harborview Med. Ctr., 154 Wn. App. 279, 288, 227 P.3d 297 (2010) ("A declaration that contains only conclusory statements without adequate factual support does not create an issue of material fact that defeats a motion for summary judgment." (citing Guile v. Ballard Cmty. Hosp., 70 Wn. App. 18, 25, 851 P.2d 689 (1993))).

Moreover, we review a trial court's order granting a motion to compel or deny arbitration de novo. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 797, 225 P.3d 213 (citing Adler v. Fred Lind Manor, 153 Wn.2d 331, 342, 103 P.3d 773 (2004)). "Courts resolve the threshold legal question of arbitrability of the dispute by examining the arbitration agreement without inquiry into the merits

of the dispute." Heights at Issaquah Ridge, Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 403, 200 P.3d 254 (2009).

Washington courts apply a "'strong presumption in favor of arbitrability,'" and "'[d]oubts should be resolved in favor of coverage.'" Peninsula Sch. Dist. No. 401 v. Pub. Sch. Emps. of Peninsula, 130 Wn.2d 401, 414, 924 P.2d 13 (1996) (quoting Council of Cty. & City Emps. v. Spokane County, 32 Wn. App. 422, 424-25, 647 P.2d 1058 (1982)). "If the dispute can fairly be said to invoke a claim covered by the agreement, any inquiry by the courts must end." Heights at Issaquah Ridge, 148 Wn. App. at 403.

The UAA, which governs the validity of arbitration agreements, provides that "[a]n agreement contained in a record[6] to submit to arbitration any existing or subsequent controversy arising between the parties is valid, enforceable, and irrevocable." RCW 7.04A.060(1). Because arbitration is a matter of contract, "'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" Satomi, 167 Wn.2d at 810 (internal quotation marks omitted) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)).

Under Washington law, an express agreement to arbitrate is not required. As a matter of contract, "[a] party may consent to arbitration without signing an arbitration clause, just as a party may consent to the formation of a contract without signing a written document." Romney v. Franciscan Med. Grp., 186 Wn. App. 728, 747, 349 P.3d 32 (citing Fisser v. Int'l Bank, 282 F.2d 231, 233 (2d Cir.

---

[6] A "[r]ecord" is defined as information "inscribed on a tangible medium" or stored electronically, which is "retrievable in perceivable form." RCW 7.04A.010(7).

7

1960)), review denied, 184 Wn.2d 1004 (2015). Absent an express bilateral contract, voluntary membership in a professional organization establishes assent to an arbitration agreement contained in that organization's bylaws. See, e.g., Keith Adams & Assoc., Inc. v. Edwards, 3 Wn. App. 623, 477 P.2d 36 (1970), disapproved of on other grounds by Godfrey v. Hartford Cas. Ins. Co., 142 Wn.2d 885, 16 P.3d 617 (2001); Lane v. Urgitus, 145 P.3d 672, 681, 686 (Colo. 2006) ("[A]rbitration provisions and procedures contained in a voluntary membership organization of real estate professionals are binding on its members." (citing Jorgensen Realty, Inc. v. Box, 701 P.2d 1256, 1257-58 (Colo. App.1985))) ("[T]he relationship between a voluntary association and its members is a contractual one and, by joining such an organization, a member agrees to submit to its rules and regulations and assumes the obligations incident to membership."); Elbadramany v. Stanley, 490 So. 2d 964, 966 (Fla. Dist. Ct. App. 1986) ("The constitution and by-laws of a voluntary association, when subscribed or assented to by the members, becomes a contract between each member and the association." (citing Sult v. Gilbert, 3 So. 2d 729 (Fla. 1941))); Rogers Realty, Inc. v. Smith, 76 P.3d 71, 72 (Okla. Civ. App. 2003) ("[W]hen realtors voluntarily submit to their organizations' authority, then they are bound by its rules.").

For example, in Keith Adams, defendant Dick Edwards was employed by plaintiff Keith Adams & Associates as a real estate salesperson when a dispute arose in relation to a commission due on the sale of an apartment complex. 3 Wn. App. at 624. Keith Adams & Associates asserted that its president, Keith Adams, was the selling salesperson of the property and, thus, was due the

majority of the commission paid. Keith Adams, 3 Wn. App. at 624. Disagreeing with the allocation of the commission paid on the sale, Edwards filed an arbitration complaint against Keith Adams & Associates with the Tri-City Board of Realtors pursuant to that board's bylaws. Keith Adams, 3 Wn. App. at 624. At the time of the dispute, Edwards and Keith Adams & Associates were both voluntary members of the Board. Keith Adams, 3 Wn. App. at 624. After Edwards prevailed at arbitration, Keith Adams & Associates petitioned the superior court to vacate the award. Keith Adams, 3 Wn. App. at 624-25. Edwards answered, moved the court to dismiss Keith Adams & Associates' petition, and requested confirmation of the arbitration award. Keith Adams, 3 Wn. App. at 625. The superior court granted both of Edwards' motions, and Keith Adams & Associates appealed. Keith Adams, 3 Wn. App. at 625.

On appeal, Keith Adams & Associates contended that there was no written arbitration agreement between the parties as required by former RCW 7.04.010 (2005)[7] and, thus, that it was not required to arbitrate the dispute. Keith Adams, 3 Wn. App. at 625. Division III rejected this claim, holding that, despite the absence of an independent written agreement between Edwards and Keith Adams & Associates, the parties, "in applying for membership with the Tri-City Board of Realtors, Inc., agreed to conform to the bylaws of the board which provided for the settlement of future disputes between members by arbitration." Keith Adams, 3 Wn. App. at 625. Thus, "by requesting, and being granted,

---

[7] Former RCW 7.04.010 stated, in part, "[t]wo or more parties may agree in writing to submit to arbitration." The current version of the UAA, RCW 7.04A.060(1), requires only that an arbitration agreement be "contained in a record," but does not mandate a written agreement between the parties.

9

membership" in the Tri-City Board of Realtors, Keith Adams & Associates "agreed to submit such disputes occurring in the future to arbitration." Keith Adams, 3 Wn. App. at 626. Notwithstanding former RCW 7.04.010's language requiring the parties to "agree in writing to submit to arbitration," the court held that the parties' voluntary membership in the Tri-City Board of Realtors constituted a binding agreement to arbitrate future disputes pursuant to that board's bylaws. Keith Adams, 3 Wn. App. at 626.

The court's ruling in Keith Adams controls the outcome of this matter. Marcus & Millichap's membership in the CBA is fully supported by the record. Michelle Mills Clement, executive director and chief executive officer of the CBA, testified that Marcus & Millichap has been a CBA member since 1993, is currently a CBA member, and has paid the requisite fees and dues during this time. Accordingly, Marcus & Millichap has been assigned the "CBA Office ID" number 974500, a number unique to Marcus & Millichap. This CBA Office ID number allows Marcus & Millichap to sponsor "participating agents" from its office, a designation that allows these agents to "have full access to all services under the brokerage member's office" "upon payment of [the] attendant fees." At the time of the trial court's decision, 18 of Marcus & Millichap's 29 agents in the Seattle office were members of the CBA.[8]

Additionally, Marcus & Millichap's CBA membership is evidenced by the fact that it has previously availed itself of CBA arbitration proceedings on at least

---

[8] A printout from the CBA's website showing the search results for Marcus & Millichap's page identifies the names and contact information of Marcus & Millichap's participating CBA members and their association with "Marcus & Millichap, Inc."

two occasions;[9] a procedure limited to CBA members. Notably, on March 7, 2011, "Marcus & Millichap Real Estate Investment Services," the entity, filed an arbitration complaint with the CBA against Westlake Associates, Inc. in connection with a commission dispute. In its arbitration complaint, Marcus & Millichap specifically invoked the CBA's arbitral jurisdiction, requesting "an arbitration hearing on an infraction of [the CBA's] rules and bylaws by Westlake Associates Inc.," while simultaneously recognizing that its complaint was untimely under the CBA arbitration rules.[10] (Emphasis added.) As an addendum to the arbitration complaint, Marcus & Millichap attached, and in its complaint explicitly referred to, the CBA arbitration rules. Furthermore, Scott Morasch, a broker involved with the sale of the Property at issue herein, was similarly involved in the dispute giving rise to the 2011 arbitration proceedings.

Nevertheless, at oral argument, counsel for Marcus & Millichap asserted that there is no evidence that Marcus & Millichap is even a member of the CBA. This is so, counsel asserts, because neither party has been able to produce Marcus & Millichap's original signed CBA membership application form.[11] This contention is unavailing.

---

[9] In addition to the March 7, 2011 complaint described herein, in May 2009, "Marcus & Millichap, Seattle," the entity, was named as a respondent in an arbitration complaint filed by The Foundation Group in connection with a dispute regarding a commission agreement between brokers. There is no evidence that Marcus & Millichap objected to the CBA's arbitral jurisdiction at that time.

[10] In this 2011 arbitration complaint, Marcus & Millichap noted that, although the "CBA Arbitration Rules require an action to be filed within 90 days, good cause exists to allow the Arbitration to proceed under the current circumstances."

[11] Indeed, the CBA concedes that it does not maintain or possess copies of any records, including membership agreements, that predate 2009.

In addition to the absence of a signed membership application form, which is not required to form a valid agreement to arbitrate, Marcus & Millichap's repudiation of its membership status seemingly relies upon statements of its regional manager, Joel Deis, who has worked for Marcus & Millichap since 2006.[12] Deis, in his role as the regional manager and designated broker of the Seattle office, is "authorized to make decisions on behalf of Marcus & Millichap on a day to day basis." Deis testified that he "do[es] not believe Marcus & Millichap is a member of [the CBA]," that he has "never previously seen or been provided a CBA application form or other document which requires that members of [the] CBA resolve broker disputes through arbitration with [the] CBA," and that he has "never seen [the] CBA's rules, regulations or bylaws or been advised that Marcus & Millichap might be bound by them." Despite these hedged assertions, the record shows that Deis, as Marcus & Millichap's "authorizing broker" entitled to act on behalf of Marcus & Millichap, has completed numerous "Broker Roster Updates" using Marcus & Millichap's unique "CBA Office ID" number to report changes to Marcus & Millichap's currently participating CBA brokers. Moreover, Deis recognized that Marcus & Millichap's agents utilize the CBA's multiple listing services in order to research and advertise properties.

Deis further testified that, to the best of his knowledge, "Marcus & Millichap has never participated in any form of arbitration proceeding with [the]

---

[12] Marcus & Millichap also points to declarations of its real estate agents Scott Morasch and Kellen Moll. Moll is not a member of the CBA. Like Deis, Morasch, a CBA member, testified that he had "never been provided or reviewed CBA's rules, regulations or bylaws or been advised by CBA that [he] might be bound by them." These statements do not rebut evidence of Marcus & Millichap's membership status.

CBA," when, in fact, Marcus & Millichap has participated in at least two other CBA arbitration proceedings during Deis's tenure. Deis's carefully crafted, prevaricating assertions do not rebut or even contradict the direct evidence of Marcus & Millichap's status as a CBA member. Where there is direct evidence of a fact, a witness does not raise an issue as to the truth of that fact merely by stating that the witness is ignorant of the truth of that fact.

Accordingly, on the question of Marcus & Millichap's membership status, the evidence supports only the conclusion that Marcus & Millichap is a voluntary CBA member that assented to the terms of the arbitration provision contained in the CBA bylaws when it was granted membership in 1993. On the question of Marcus & Millichap's corporate knowledge of the circumstance, this conclusion is reinforced by the established facts that Marcus & Millichap has previously engaged in CBA arbitration proceedings on multiple occasions and, in one instance, complained of another member's violation of the CBA "rules and bylaws." Marcus & Millichap previously evidenced awareness of the CBA bylaws and attempted to utilize the bylaw arbitration provision in its favor. Marcus & Millichap cannot escape its obligation to arbitrate this dispute by submitting declarations in which witnesses artfully set forth their ignorance of reality. See Seven Gables Corp., 106 Wn.2d at 13. Such declarations do not create a dispute as to a material question of fact.

Furthermore, the arbitration agreement is sufficiently "contained in a record," as required by the UAA. A "record" of an arbitration agreement may exist on any tangible or electronic medium and must be "retrievable in

perceivable form." RCW 7.04A.010(7). A signed agreement is not required. Romney, 186 Wn. App. at 747. In this case, the court was presented with a physical copy of the CBA bylaws, which are also reproduced on the CBA's website.[13] Consequently, the arbitration agreement, to which Marcus & Millichap assented, is contained in the CBA bylaws, a "record" as defined by the UAA.

The trial court did not err in determining that the CBA bylaw arbitration provision constitutes a valid and enforceable arbitration agreement between the parties to this dispute.

III

Marcus & Millichap further contends that even if the CBA bylaw arbitration provision constitutes a valid agreement to arbitrate, the scope of the agreement does not encompass the dispute at issue herein. This is so, it asserts, because the sale of the Property is unrelated to the CBA, the Property was never listed with the CBA, and the CBA had no involvement with the listing of the property. This contention is unavailing.

"If the court finds as a matter of law that the arbitration clause is enforceable, all issues covered by the substantive scope of the arbitration clause must go to arbitration." Townsend v. Quadrant Corp., 153 Wn. App. 870, 881, 224 P.3d 818 (2009) (citing RCW 7.04A.060(2), (3)), aff'd on other grounds, 173 Wn.2d 451, 268 P.3d 917 (2012). "'An order to arbitrate should not be denied unless it may be said with positive assurance the arbitration clause is not

---

[13] Bylaws, COMMERCIAL BROKERS ASS'N, http://www.commercialmls.com/Resources/Rules-and-Legal/Bylaws (last visited January 25, 2016).

14

susceptible of *an* interpretation that covers the asserted dispute.'" Peninsula Sch. Dist., 130 Wn.2d at 413-14 (quoting Council of Cty. & City Emps., 32 Wn. App. at 424-25). Washington's strong presumption in favor of arbitrability commands that "'all questions upon which the parties disagree are presumed to be within the arbitration provisions unless negated expressly or by clear implication.'" Peninsula Sch. Dist., 130 Wn.2d at 414 (quoting Council of Cty. & City Emps., 32 Wn. App. at 424-25).

Having found a valid agreement to arbitrate, the arbitration provision covers the dispute at issue herein. The language of the CBA arbitration provision is broad. The bylaws provide that "[i]t is the duty of all members of this Association (and each so agrees) to submit all controversies involving commissions, between or among them to binding arbitration by the Association, rather then [sic] to bring a suit to law."

The underlying claim in this matter involves a commission-related controversy between two CBA members. In the arbitration complaint, Yates alleges that Marcus & Millichap refused to co-broker the sale of the Property and asserts that it is owed one-half of the total commission earned on the sale. Because the underlying dispute between Marcus & Millichap and Yates falls squarely within the language of the bylaw arbitration provision, arbitration of the matter is required.

Moreover, it is inconsequential that the Property was never listed with the CBA or that the CBA had no involvement with the listing or sale of the Property. This is so because the plain language of the arbitration agreement is not so

15

limited. The bylaw contains no requirement that the commission dispute involve the CBA or its multiple listing services. Thus, the arbitration agreement governs the commission dispute between Marcus & Millichap and Yates.

Next, despite the plain language of the arbitration clause, Marcus & Millichap contends that because the arbitration provision as it existed at the time Marcus & Millichap became a CBA member in 1993 is not in the record, there is no evidence that the 1993 CBA bylaw provision would apply to the dispute at hand. This argument misses the mark.

The CBA bylaws explicitly contemplate amendment by the CBA board of directors and give the board the authority to amend the rules and procedures governing arbitration. Thus, it need not be established how the bylaw provision read in 1993, when Marcus & Millichap became a member. Instead, it is only necessary to establish how the bylaw arbitration provision read at the time that this dispute arose. Because, at the time the dispute arose in 2014, the CBA bylaws mandated arbitration of "all controversies involving commissions, between or among" members, the applicable CBA arbitration provision encompasses the controversy between Marcus & Millichap and Yates.

Accordingly, Marcus & Millichap, as a voluntary member of the CBA, sufficiently manifested assent to the CBA arbitration agreement when it was granted CBA membership status in 1993 and continued its membership through the years. As the plain language of the bylaw arbitration provision covers the

parties' dispute, Marcus & Millichap is obligated to arbitrate this commission-related controversy with Yates.[14]

Affirmed.

We concur:

---

[14] Yates, as the prevailing party on appeal, is entitled to an award of appellate costs. RAP 14.2, 18.1.