IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| UNIVERSAL HEALTH SERVICES, INC., a Washington corporation, | ) ) ) | No. 79086-2-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| ALISHA LINGVEVICIUS, | ) ) | |
| Respondent. | ) ) ) | FILED: October 21, 2019 |

HAZELRIGG-HERNANDEZ, J. — Universal Health Services Inc. appeals the denial of their motion to compel arbitration. The court did not enter findings or explain the basis for the ruling in the order denying the motion. We are unable to review the decision below without a sufficient record from the trial court. We reverse and remand for an evidentiary hearing to resolve disputed facts and entry of findings.

## FACTS

Universal Health Services, Inc. (UHS) moved to compel arbitration in the course of defending against litigation brought by Alisha Lingvevicius. She acknowledged in her response to UHS's motion that an evidentiary hearing is usually required to resolve the "highly factually intensive analysis" of whether there was a meeting of the minds and an agreement to arbitrate. UHS's reply to

Lingvevicius's opposition to the motion to compel arbitration expressly requested limited discovery and an evidentiary hearing if the court was not inclined to compel arbitration. As no evidentiary hearing was held, and no findings entered, this court has few settled facts before us. Much of the information set out below consists of assertions of the parties extracted from briefing, many of which are disputed.

In March 2013, Lingvevicius began employment as a licensed practical nurse with UHS at their Schick Shadel Hospital (Hospital) in Burien, Washington. UHS utilizes a third-party online management system called HealthStream for both training and education. Each employee has a unique username and password to access HealthStream. Lingvevicius asserts that there was only one computer available for all of the employees to complete their ongoing training and it was not connected to a printer. She further claimed that there was insufficient time to complete the various training modules due to patient care demands and, as a result, it was common for employees to either share log-in information and complete modules for each other, or to share answers so that their co-workers could "click through" modules as quickly as possible.

The parties agreed that the Hospital rolled out a corporate dispute resolution program, the Alternative Resolution of Conflicts Program (ARC) in October 2013. During ARC's implementation, each employee was required to review and acknowledge the ARC Agreement by participating in an online learning activity titled, "Alternative Resolution of Conflicts—ARC Course," which could only be accessed through HealthStream. The ARC training program required employees to go through four distinct steps: 1) open and review the ARC summary, 2) open

and review the ARC Agreement, 3) open and review the ARC Acknowledgement, and 4) complete the ARC Attestation. The ARC attestation can only be accessed after the first three steps have been completed.

The ARC Attestation contains two options for the employee. The first option states, "I acknowledge this course contains the ARC Program materials, and I have had an opportunity to review them." The second option reads "I acknowledge this course contains the ARC Program materials, but have difficulty understanding or accessing the information." If the participant selected the second option indicating that they did not understand the material or had difficulty accessing it, a warning appeared on the screen directing them to review the materials again and seek additional information from Human Resources. It further advised the participant that there is a 30 day timeframe to opt out of the program.

It is undisputed that Lingvevicius's log-in information was used on the computer at the Hospital on November 8, 2013 to complete some competency courses, one of which was the ARC course. While Lingvevicius stated that she does not specifically recall doing this, she did not expressly dispute that she was the person who accessed the course. Lingvevicius acknowledged that the HealthStream records retain information about log-in, which modules were accessed, and when that access occurred. She asserted that she routinely clicked through the competencies on various modules as quickly as possible in order to get back to tending to patients. She claimed to have not been able to access all of the ARC documents. The records for the ARC course as to Lingvevicius reflect that the second option was selected, which registered with a score of "0" as

opposed to the first option which would have provided her with a score of "100." Selecting this option provided her with the message, "Please go back and review steps 1, 2, and 3. If you are still having difficulty accessing or understanding any information, please contact your Human Resources Department immediately as you only have 30 days to decide whether to opt out of the ARC program."

Lingvevicius did not contact human resources and alleged obstacles to meeting with anyone from that department due to her schedule. She asserted that Human Resource Manager, Elaine Oksendahl, only worked during the day while Lingvevicius worked night shift. Lingvevicius claimed that she did express her concerns to the Nursing Director, Christine Diego. It is undisputed that she never submitted a completed Opt-Out form, and UHS alleged the result is that she was subsequently enrolled in the ARC program in December 2013.

The following are facts based on the Clerk's Papers designated below and documented procedural history of this case. In January 2018, Lingvevicius filed suit in King County Superior Court against UHS, bringing claims of 1) interference with her right to family leave under chapter 49.78 RCW, 2) discrimination and retaliation under the Washington Law Against Discrimination (WLAD), and 3) retaliation under WLAD for her previous complaints for racial discrimination. In March 2018, UHS removed this case to the U.S. District Court for the Western District of Washington. UHS then moved to compel arbitration. Lingvevicius moved for remand to state court which was granted by the federal judge, without ruling on UHS's motion to compel arbitration.

After the case was remanded to King County Superior Court, UHS moved to compel arbitration and submitted declarations with supporting documents. Lingvevicius filed her opposition to the motion and her own supporting declarations. UHS then filed a reply with additional materials. The documents included in Lingvevicius's opposition motion and UHS's reply collectively included references to and orders of the court in the case of Natalie Bailey v. Universal Health Services, Inc.[1] The Bailey case was on appeal at the time and has nearly identical claims to Lingvevicius's case.

One of the documents submitted to the trial court in this case was the Bailey trial judge's ruling on a similar demand by UHS to compel arbitration and the detailed findings of fact entered after an evidentiary hearing held on that matter, which provided the basis for that ruling. Lingvevivius's response to UHS' motion to compel asked the court to take judicial notice of the extensive findings and order entered in the Bailey case. In September 2018, the trial court in Lingevivicius's case issued an order denying UHS's motion to compel arbitration without holding an evidentiary hearing, entering factual findings or otherwise explaining the basis for the ruling. UHS timely appealed the order.

## DISCUSSION

Though the parties agree that the Federal Arbitration Act[2] (FAA) governs, we must first look to state law to determine whether an arbitration agreement exists between them. RCW 7.04A.070 governs disputes between the parties as to

---

[1] King County Case No. 17-2-25919-5 KNT
[2] 9 U.S.C. §§ 1-307 (2012)

- 5 -

whether an arbitration agreement exists. Marcus & Millichap Real Estate Inv. Servs. of Seattle Inc. v. Yates, Wood & Macdonald, Inc., 192 Wn. App. 465, 472, 369 P.3d 503 (2016)

An appeal from an order denying a motion to compel arbitration is reviewed de novo. Neuson v. Macy's Dept. Stores, Inc., 160 Wn. App 786, 792, 249 P.3d 1054 (2011). The burden of proving an agreement is not enforceable is on the party seeking to avoid arbitration. McKee v. AT & T Corp., 164 Wn.2d 372, 383, 191 P.3d 845 (2008). If a party opposes a motion to compel arbitration, RCW 7.04A.070(1) clearly states that "the court shall proceed summarily to decide the issue. Unless the court finds that there is no enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate." General contract defenses apply to invalidate arbitration agreements. McKee, 164 Wn.2d 383.

Given that there are so few undisputed facts in the instant case, particularly as to whether an agreement to arbitrate exists between the parties, findings from the trial court are necessary for this court to properly engage in our analysis. Our Supreme Court has cautioned that factual findings by the court are necessary when disputes of fact exist. Adler v. Fred Lind Manor, 153 Wn.2d 331, 350, 103 P.3d 773 (2004). In Adler, the court recognized that the circumstances likely did not warrant Adler's challenge of unconscionability regarding an arbitration agreement. But the court held it could not rule on the matter without further factual findings by the trial court when a dispute of material fact existed due to the parties

offering a different version of what had occurred. Id. In Adler, the trial court granted the motion to compel arbitration without holding a hearing. Id. at 340.

UHS relies on Marcus & Millichap in support of their argument that an evidentiary hearing is necessary when disputes of material fact exist. 192 Wn. App. 472. In Marcus & Millichap, this court addressed the proper procedure for evaluating an arbitration agreement when the parties dispute its validity and relied upon the current uniform arbitration act[3] in finding the need for an evidentiary hearing if dispute of material facts exist. Id. Analysis in that case included a review of numerous other jurisdictions' procedures for a summary proceeding in such a context. Id.

We agree with UHS that Marcus & Millichap calls for such a hearing in this case. Conflicting assertions of the parties remain as to the circumstances surrounding Lingvevicius's access to and understanding of the ARC agreement. The agreement's enforceability hinges on determinations of fact by the trial court, particularly since Lingvevicius raises the issue of procedural unconscionability. We are unable to properly review the trial court's decision denying the motion to compel arbitration due to the absence of factual findings regarding these critical issues.

Here, UHS expressly asked for limited discovery and an evidentiary hearing and Lingvevicius agreed that the "highly factually intensive analysis" could require one. This Division's recent opinion in Natalie Bailey v. Universal Health Services, Inc., et al., the case referenced in Lingvevicius's pleadings at the trial court,

---

[3] Chapter 7.04A RCW.

highlights the utility of such hearings in this sort of litigation. No. 78365-3-I, slip op. (Wash. Ct. App. Aug. 19, 2019) (unpublished), http://www.courts.wa.gov/opinions/pdf/783653.pdf In Bailey, this court relied upon the extensive factual findings from the trial court after limited discovery and an evidentiary hearing on a factually similar case.

Questions of fact exist in the case before us regarding, at a minimum, the following issues: 1) when Lingvevicius became aware of the ARC program and under what circumstances; 2) whether Lingvevicius did in fact login and complete the training herself (as opposed to a co-worker using her login credentials, as she alleges occurred with regularity) and under what conditions; 3) whether Lingvevicius understood the training and was aware of the opt-out requirement and time period; 4) Lingvevicius's communication with Human Resources and her supervisors about her inability to understand the ARC materials. Resolution of these issues is essential before the ultimate question can be answered by the court: whether Lingvevicius was bound by the ARC argreement. Given the numerous issues of material fact that go directly to the question of whether an enforceable agreement to arbitrate existed, limited discovery and an evidentiary hearing were called for.

When disputes exist as to the circumstances surrounding an agreement, the reviewing court should remand to the trial court for additional findings. Adler, 153 Wn.2d 350. It is the trial court's role to determine the facts of a case by weighing and evaluating evidence and making credibility determinations. Bland v. Mentor, 63 Wn.2d 150, 154, 385 P.2d 727 (1963). "Thus the appellate court's role

is limited to determining whether substantial evidence supports the trial court's findings of fact." Endicott v. Saul, 142 Wn. App. 899, 910, 176 P.3d 560 (2008).

This court cannot engage in proper review of the denial of UHS' motion to compel arbitration without a sufficient record from the trial court as to the basis for the challenged ruling. As such, we are unable to address the central issue of whether the trial court erred in denying UHS's motion to compel arbitration. We reverse and remand this case for limited discovery, an evidentiary hearing and entry of findings.

Reversed and remanded.

WE CONCUR: