In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 09-2982 & 09-3087

ALFRED JANIGA,

*Plaintiff-Appellee,*

*v.*

QUESTAR CAPITAL CORPORATION, *et al.*,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 2462—**Milton I. Shadur**, *Judge.*

ARGUED JANUARY 15, 2010—DECIDED AUGUST 2, 2010

Before WOOD, EVANS, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* This case poses the question whether the court or an arbitrator is responsible for deciding whether a particular document that the parties signed qualifies as a contract, and if so, whether that contract includes an arbitration clause. Alfred Janiga is a Polish immigrant who has lived and worked in Illinois for more than 20 years; nevertheless, to this day (by his account) he understands only limited English. Janiga's

brother, Weislaw Hessek, runs Hessek Financial Services, LLC ("Hessek Financial") and is a registered representative of Questar Capital Corporation ("Questar"), a securities broker-dealer. Problems erupted after Hessek arranged for his brother to invest with Questar. Janiga signed one page of Questar's New Account Form and began depositing money into his new account. The Form included an arbitration clause. One year after opening the account, and unhappy with the returns on his investment, Janiga sued Hessek, Hessek Financial, and Questar.

Defendants (to whom we refer collectively as "Questar" unless the context requires otherwise) asked the district court to stay proceedings and order arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4. The district court decided that it could not order arbitration immediately because it was not clear whether a contract between Questar and Janiga even existed. It therefore denied the motions without prejudice and told Questar that it could renew its motion if and when the court concluded that there was a contract. Construing this as an order denying a motion to refer the case to arbitration, all three defendants filed this immediate appeal. *Id*. § 16.

The Supreme Court has said that the responsibility to determine the validity of the contract as a whole is assigned to the arbitrator, while specific challenges to an arbitration clause normally remain with the court. See *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) (agreements to arbitrate are on an equal footing with other contracts and are subject to generally appli-

cable contract defenses). But who decides whether a contract exists at all? Janiga believes that this is an issue for the district court. Questar takes the opposite position and urges that the arbitrators have this responsibility. The district court decided that it should address the contract-formation question, but it refrained from doing so on the ground that it lacked sufficient evidence to reach a conclusion. We agree with the district court that the existence of a contract is an issue that the courts must decide prior to staying an action and ordering arbitration, unless the parties have committed even that gateway issue to the arbitrators. *Id.* at 2779-81. Unlike the district court, however, we are satisfied that the record contains enough evidence to resolve the question. That evidence shows that the parties formed a contract and that their agreement included an arbitration clause. We therefore reverse the district court's order and remand with instructions to grant Questar's motion to stay and to order arbitration.

**I**

Janiga is the President and Secretary of Polkraft Builders Corporation, an Illinois company that specializes in residential and commercial remodeling. According to Janiga, Hessek lobbied him for two years to invest with Questar. After Janiga finally agreed to open an account in March 2008, Hessek brought Janiga a "piece of paper" and told him to sign it. The paper Hessek proffered was page three of Questar's New Account Form. Janiga represents that Hessek never discussed "any terms of any

agreement . . . including the meaning and existence of arbitration as a dispute resolution" and, despite Janiga's explicit request, Hessek never provided copies of any documents related to the account. Janiga speaks and understands only limited English. According to Janiga, all of his communications with Hessek were in Polish.

The New Account Form is actually just one in a series of three connected documents; the other two forms are the Client Agreement and the Sponsorship Program Disclosure. All contract documents are written in English. Janiga admits that he saw and signed page three of the New Account Form when Hessek gave it to him, but he says that this is all that he saw. Page three, however, made no secret of the fact that there was an arbitration clause in the picture. Directly above Janiga's signature, it proclaims: "I/WE HAVE READ AND UNDERSTOOD THE PRE-DISPUTE ARBITRATION AGREEMENT CONTAINED ON PAGE 4, PARAGRAPH 9 OF THE CLIENT AGREEMENT AND HAVE RECEIVED A COPY THEREOF."

As that language indicates, the arbitration clause appears in the separate Client Agreement, which follows the page that Janiga signed. The clause states in part:

> I (we) understand that my (our) account is subject to the arbitration rules of the Financial Industry Regulatory Authority. Arbitration is used to resolve a dispute between two parties. . . .
>
> THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRA-

TION AGREEMENT, THE PARTIES AGREE AS FOLLOWS:

> (A) All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.

> (B) Arbitration awards are final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.

> . . . .

> I (we) agree that all controversies that may arise between us concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, where entered into before, on, or after the date this account is opened, shall be determined by arbitration before a panel of independent arbitrators set up pursuant to the rules of the Financial Industry Regulatory Authority, or, where applicable, a court of competent jurisdiction.

The Client Agreement specifies that New York law governs the agreement and its enforcement, but the arbitration clause found within the Client Agreement provides that the FAA and Minnesota law govern the arbitration agreement.

Once Janiga opened his account, Questar started to send monthly statements. For a time, Janiga did not register any complaints. Three months after signing the agreement, Janiga invested an additional $180,000 in his account. A year into the relationship, however, Janiga

filed a complaint against Hessek, Hessek Financial, and Questar in the United States District Court for the Northern District of Illinois. Janiga's complaint asserted six theories of recovery against the defendants: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5; (2) negligence; (3) breach of fiduciary duty; (4) fraud; (5) excessive trading and churning of an investment account; and (6) violation of the Illinois Fraud and Deceptive Business Practices Act.

On May 20, 2009, Questar filed a motion to dismiss, or in the alternative, to stay proceedings and order arbitration. On June 10, 2009, Hessek and Hessek Financial filed a separate motion asking the court to order arbitration. Janiga conceded that he "agreed to invest" with the defendants, but he offered a number of reasons why the district court should deny those motions and disregard the arbitration clause. To resolve these issues, the district court held three status conferences over two months. The first two of these addressed various issues related to contract enforcement, such as Illinois consumer protection law and Hessek's purported fiduciary duty. At the third and final status conference, on July 10, 2009, the district court focused on the "meeting of the minds," in light of Janiga's limited understanding of English and his assertion that he had never seen more than one page of the contract. The district court concluded that it would not stay proceedings and order arbitration unless and until the defendants established that a contract was formed. The district court judge orally explained his decision as follows:

> [T]he step that has to come first is to determine whether there was an Agreement. And accordingly I am at this point denying the motion to stay and to compel arbitration . . . without prejudice for the possible renewal if it's determined on an appropriate record that there is indeed an Agreement to arbitrate at all. . . . It seems to me that what [] you ought to be thinking about is how to pose the issue in a way that the Court can address it, whether through hearing, I would expect, or some appropriate way.

The district court entered an order denying the motions without prejudice on July 10, 2009.

Questar filed a timely notice of appeal on August 7, 2009, FED. R. APP. P. 4(a)(1)(A), and Hessek filed a separate notice of appeal on August 20, 2009, FED. R. APP. P. 4(a)(3). Questar's notice of appeal was docketed as No. 09-2982; Hessek's appeal was docketed as No. 09-3087. We consolidated the appeals for our review.

## II

Before turning to those questions, however, we must explain why our appellate jurisdiction is secure. While ordinarily the courts of appeals have jurisdiction only over final decisions, 28 U.S.C. § 1291, the FAA establishes appellate jurisdiction over certain interlocutory appeals. See *Arthur Andersen LLP v. Carlisle,* 129 S. Ct. 1896, 1900 (2009). It provides that an interlocutory appeal may be taken from a district court order "refusing a stay of any action . . . under this title" or "denying a petition . . . to

order arbitration to proceed." 9 U.S.C. § 16(a)(1)(A), (B). We have held that this rule applies even if the district court expressly intended to revisit the issue after additional fact-finding. See, *e.g.*, *Boomer v. AT&T Corp.,* 309 F.3d 404, 412-13 (7th Cir. 2002); *Koveleskie v. SBC Capital Mkts., Inc.,* 167 F.3d 361, 363 (7th Cir. 1999).

That said, we have also recognized that some housekeeping orders that give rise to a "delay incident to an orderly process" are not immediately appealable. *Cont'l Cas. Co. v. Staffing Concepts, Inc.,* 538 F.3d 577 (7th Cir. 2008) (quoting *Middleby Corp. v. Hussman Corp.,* 962 F.2d 614, 616 (7th Cir. 1992)). In *Continental Casualty,* the district court struck without prejudice the defendants' motion to dismiss or stay the action pending arbitration, in order to give the court an opportunity to address pending motions related to personal jurisdiction and venue. 538 F.3d at 579-80. This rule recognizes that district courts must be given the discretion to manage their cases; routine orders that incidentally delay a decision on a motion to order arbitration fall outside the scope of § 16.

This case involves more than an action designed to permit an orderly process. The district court denied defendants' motions to stay because it believed that the defendants had not established that a contract existed. This is the type of decision that we may review immediately. We do so now, and decide that the district court erred in denying Questar's motion, and that it should take another look at Hessek and Hessek Financial's motion.

**III**

We begin our analysis with the FAA. 9 U.S.C. §§ 1-16. The FAA provides that a written arbitration agreement in certain contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. Although it is often said that there is a federal policy in favor of arbitration, federal law places arbitration clauses on equal footing with other contracts, not above them. See *Rent-A-Center, supra,* at 2776; *Gotham Holdings, LP v. Health Grades, Inc.,* 580 F.3d 664, 666 (7th Cir. 2009) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Stanford University,* 489 U.S. 468, 476 (1989)). Any "preference" for arbitration is reserved for the interpretation of the scope of a valid arbitration clause, see, *e.g.,* *AT&T Techs., Inc. v. Communications Workers of Am.,* 475 U.S. 643, 649-50 (1986), which is not at issue here. The parties do not dispute that the scope of the arbitration clause is broad enough to encompass the issues raised in the complaint.

As we have already noted, all three defendants filed motions under sections 3 and 4 of the FAA. Section 3 allows a party to an action in federal court to request a stay of that action pending arbitration if a valid arbitration clause exists, and section 4 allows a party to file a motion to order that arbitration. 9 U.S.C. §§ 3, 4. The district court denied these motions without prejudice pending a determination that a contract existed.

The first aspect of the district court's ruling that Questar challenges is the conclusion that it was the court's job to decide whether a contract exists. The division of labor

between courts and arbitrators is a perennial question in cases involving arbitration clauses. In *Prima Paint Corp. v. Flood & Conklin Manufacturing Co.,* 388 U.S. 395 (1967), the Supreme Court announced that, when faced with motions to stay suits or order arbitration, courts should evaluate only the validity of the arbitration agreement; challenges to the validity of the entire contract—*e.g.*, fraud in the inducement—should be left to the arbitrator. See *James v. McDonald's Corp.,* 417 F.3d 672, 680 (7th Cir. 2005) (describing the *Prima Paint* rule). In *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440 (2006), the Court reviewed a decision of the Supreme Court of Florida that refused to enforce an arbitration clause in a contract that was challenged as unlawful under state law. Applying *Prima Paint* and *Southland Corp. v. Keating,* 465 U.S. 1 (1984), the Court "conclude[d] that because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract. The challenge should therefore be considered by an arbitrator, not a court." 546 U.S. at 446. In short, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." *Id.* at 449.

*Buckeye* thus reaffirmed the validity of *Prima Paint* in allocating the responsibility for two types of challenges: challenges to the validity of the arbitration agreement and challenges to the contract as a whole. In a footnote, however, the Court in *Buckeye* acknowledged the possibility of a third type of challenge, which is exactly the issue that is before us now:

> The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former, and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent.

*Id.* at 444 n.1 (internal citations omitted). See *Rent-A-Center*, *supra*, at 2778, n.2 ("The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded,' and, as in [*Buckeye*], we address only the former."). As we understand these footnotes, the Court was reserving for another day the question who is responsible for deciding whether the parties formed a contract at all.

In *Granite Rock Co. v. International Brotherhood of Teamsters,* 130 S. Ct. 2847 (2010), the Court eliminated all doubt about the answer to that question, when it said "[i]t is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Id.* at 2855-56. In so doing, it endorsed the position that this court had taken before *Buckeye*. See, *e.g.*, *Deputy v. Lehman Bros., Inc.,* 345 F.3d 494 (7th Cir. 2003) (remanding a case to the district court to assess whether there was a meeting of the minds in light of a motion to compel arbitration); *Sphere Drake Ins.*

*Ltd. v. All Am. Ins. Co.,* 256 F.3d 587, 591 (7th Cir. 2001) (holding that "as arbitration depends on a valid contract an argument that the contract does not exist can't logically be resolved by the arbitrators"); *Gibson v. Neighborhood Health Clinics,* 121 F.3d 1126 (7th Cir. 1997) (addressing the argument that a promise lacked consideration as a judicially-determined issue). This rule follows logically from the Court's consistent emphasis on the fact that arbitration is a matter of contract. See, *e.g., Rent-A-Center*, *supra*, at 2776.

On this point, therefore, the district court was correct—the court must decide whether a contract exists before it decides whether to stay an action and order arbitration. The only place where we part company with its conclusion is its belief that it was not able to resolve this threshold question. Since Janiga does not challenge the validity of the arbitration clause itself, the district court should have constrained its review to the narrow question whether a contract existed between the parties. In our view, the record contains enough information to permit a decision on the existence of a contract. As our review is *de novo*, we can resolve that issue ourselves. See *Newkirk v. Vill. of Steger,* 536 F.3d 771, 774 (7th Cir. 2008) (reviewing the formation of a contract *de novo*).

What concerned the district court was whether Janiga appreciated the nature of the agreement that he had signed, or, as the court put it, whether there was a meeting of the minds. Janiga follows the same path in the arguments he made both in the district court and now on appeal. These arguments, if accepted, might lead

to the conclusion that the contract is not enforceable. For example, Janiga argues that he did not get a copy of the contract, he never read it, he could not read it if he tried, and he did not know what he agreed to do. He also argues that Hessek's fiduciary duty, Illinois consumer protection law, and procedural unconscionability invalidate the contract. But none of these arguments refutes the basic point that Janiga signed an agreement with Questar (using the services of Hessek) and that the parties performed under that agreement for a year or so. We are left only with the question whether that contract is enforceable, and that is the kind of issue that *Prima Paint*, *Buckeye*, and *Rent-A-Center* put squarely in the arbitrator's box.

Looking more formally at the question whether a contract exists between Janiga and Questar, we recognize first that contract formation is governed by state law. See *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). There is some question here about which state's law applies: the contract was signed in Illinois; it provides that its enforcement shall be governed by the laws of New York; and it separately provides that the arbitration agreement is subject to Minnesota law. We need not dwell on that problem, however, because we see no difference among the laws of those three states that would be dispositive. The goal in all three states is to give effect to the intent of the parties as demonstrated through objective conduct. *Carey v. Richards Bldg. Supply Co.,* 856 N.E.2d 24, 27 (Ill. 2006); *Flores v. Lower E. Side Serv. Ctr.,* 828 N.E.2d 593, 597 (N.Y. 2005); *Hickman v. SAFECO Ins. Co. of Am.,* 695 N.W.2d 365, 370 n.7 (Minn.

2005). If the terms of the contract are unambiguous, the court must enforce the contract as written. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 380 (7th Cir. 2009) (applying Illinois law); *Graev v. Graev,* 898 N.E.2d 909, 918 (N.Y. 2008); *Metro. Airports Comm'n v. Noble,* 763 N.W.2d 639, 645 (Minn. 2009).

The problem for Janiga is that he signed a contract, and that the paper he signed refers to arbitration. Janiga's signature—which he admits was given voluntarily—objectively demonstrated his assent to the contract. Indeed, Janiga admits that he agreed to open a brokerage account. All that is left for us is to determine whether the contract he signed included an arbitration clause. It does. Even if we limit our review to the one page that Janiga signed, it is impossible to avoid the conclusion that he agreed to arbitration. As we noted at the outset of this opinion, directly above his signature is the following statement, in all capital letters: "I/WE HAVE READ AND UNDERSTOOD THE PRE-DISPUTE ARBITRATION AGREEMENT CONTAINED ON PAGE 4, PARAGRAPH 9 OF THE CLIENT AGREEMENT AND HAVE RECEIVED A COPY THEREOF." This clause is unambiguous; Janiga acknowledged by his signature that he read, understood, and received a copy of the arbitration agreement, and this clause (distinct from the arbitration clause itself) says that disputes would be subject to arbitration. Questar also offers various pieces of objective evidence that support its claim that a contract exists, including Janiga's two deposits and his admission that he agreed to invest. Again, Janiga's various complaints about enforceability are not at issue here;

the only issue for the court is whether a contract was formed. It was.

Janiga finally argues that the Seventh Amendment bars arbitration. But that argument proves much too much; parties are entitled to opt in a contract for an alternative method of dispute resolution that involves neither courts nor juries. That is implicit in any arbitration agreement. Here there is more: the plain language of the contract includes an express waiver of the right to a jury trial, and we uphold such waivers even in form contracts. See, *e.g., Sherwood v. Marquette Transp. Co.,* 587 F.3d 841, 842 (7th Cir. 2009). The district court therefore should order arbitration between Janiga and Questar.

We cannot be as confident at this point that the arbitration agreement between Janiga and Questar also sweeps in Hessek and Hessek Financial. The latter two defendants have asked us to hold that the arbitration clause benefits and binds them to the same extent as Questar. Hessek's primary argument is that he and his company are agents of Questar. Certainly an agent may bind a principal to an arbitration agreement, see *Zurich Am. Ins. Co. v. Watts Indus.,* 417 F.3d 682, 687 (7th Cir. 2005), so there is no dispute that Questar is a party to the contract even though it was acting through Hessek. Hessek's appeal asks whether agents can receive the benefit of an arbitration agreement between their principal and a third party. We have answered that question in the affirmative for employees acting within the scope of their agency, *Dunmire v. Schneider,* 481 F.3d 465, 467 (7th Cir. 2007), and there does not seem to be

any reason to change the rule for non-employee agents. The remaining questions, therefore, are whether Hessek and Hessek Financial were agents of Questar, and whether the claims asserted here are within the scope of their agency. This is an issue about the arbitrability of certain claims, and so it should be decided by the court. But since the district court has not had the opportunity to pass on these issues in the first instance, we remand this much of the case to the district court so that it can make the findings necessary to decide whether these contract terms apply to Hessek and Hessek Financial based on agency principles or otherwise.

Our decision in this appeal should not be read to pass any judgment on Janiga's arguments regarding the enforceability of the contract. *Prima Paint* and *Buckeye* do not banish these arguments; they simply assign the responsibility for evaluating them to an arbitrator.

For these reasons, we REVERSE the decision of the district court to deny Questar's motion and REMAND for further proceedings consistent with this opinion.