[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14705
Non-Argument Calendar

_____

D.C. Docket No. 2:16-cv-00406-MHT-CSC

ALTON R. GRIGGS, JR.,

Plaintiff-Appellee,

YUSEF BRINSON,

Plaintiff-Intervenor-Appellee,

versus

KENWORTH OF MONTGOMERY, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(June 4, 2019)

Before MARCUS, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Kenworth of Montgomery Inc. brings this interlocutory appeal under the Federal Arbitration Act (FAA), 9 U.S.C. § 16, contending that the district court erred in denying its motions to compel arbitration of the claims brought against it by Alton Griggs and Yusef Brinson.  The district court made the contested ruling in a summary order, saying only that "the motions to compel arbitration (doc. nos. 26 & 52) are denied without prejudice and with leave to reinstate, following resolution of" another defendant's "pending motion to dismiss."  The order noted that resolution of the then-pending motion to dismiss would "affect the course of this litigation."  That was it.  The order did not provide any legal conclusions or factual findings.  After careful review, we conclude that, given the summary nature of the district court's order and the current state of the record, we are not able to conduct meaningful appellate review of Kenworth's argument.  We therefore vacate and remand for further proceedings.

## I.

Alton Griggs, a commercial truck driver, was driving a tractor-trailer when the truck's engine unexpectedly lost power and turned off.  To have the truck repaired, Griggs contacted the organization that owned the truck, A.K.G. Freight Carriers, LLC, and the seller of the truck, as the truck was still under warranty. The seller, Arrow Truck Sales, Inc., allegedly instructed Griggs to take the truck to Kenworth, an automobile repair shop in Montgomery, Alabama.  At that repair

shop, Griggs signed two invoices, each of which contained the same arbitration clause.  The arbitration clause provides:

> 4.  Arbitration.
>
> Any controversy or claim arising out of or relating to this Invoice or otherwise relating in any fashion to the purchase or sale of equipment, parts or service thereon shall be submitted to arbitration in the county in which the dealership is located, in accordance with the rules of the American Arbitration Association. Judgment upon any award rendered in such proceedings may be entered in any court having jurisdiction thereof, and the parties hereto submit to the jurisdiction of all State and Federal courts having venue in the county in which the dealership is located.

Shortly after Kenworth returned the truck to Griggs, the truck again lost power, causing it to run off the road and crash.

To recover for the damages that he suffered during that wreck, Griggs sued Kenworth and Arrow in the U.S. District Court for the Middle District of Alabama. Griggs brought state-law claims for negligence and negligent misrepresentation/fraud against Kenworth, alleging that Kenworth failed to make appropriate repairs and misrepresented that it had fixed the truck's mechanical problems.  As to Arrow, Griggs accused it of negligence, breach of express and implied warranties, and negligent misrepresentation/fraud, arguing that Arrow failed to properly evaluate and repair the truck before selling it to A.K.G.  Invoking the arbitration agreements in the repair orders, Kenworth moved to compel

3

arbitration of Griggs's claims under the FAA, 9 U.S.C. § 1 *et seq.* Griggs opposed that motion, arguing that he was not a party to any arbitration agreement and that he was not bound by the agreements because he signed the invoices in his capacity as a member of the trucking organization, A.K.G.—not in his individual capacity.

Yusef Brinson—a passenger in Griggs's truck at the time of the accident— then stepped in to intervene as a plaintiff in the action, asserting negligence claims against both Kenworth and Arrow. Kenworth moved to compel arbitration of those claims, too. Kenworth asserted that, even though Brinson had not signed the arbitration agreements, he was still bound by the agreements due to an Alabama-specific equitable doctrine that binds non-signatories to arbitration agreements. Meanwhile, Arrow moved to dismiss the claims against it, arguing that the Alabama court lacked personal jurisdiction.

In response to these motions, the district court issued a summary order denying Kenworth's arbitration motions "without prejudice and with leave to reinstate, following resolution of defendant Arrow Truck Sales, Inc.'s pending motion to dismiss." The court noted that "resolution of" the then-pending motion to dismiss "will affect the course of this litigation." But the court did not make any legal conclusions or factual findings. Kenworth now appeals.

II.

We review de novo the district court's order denying the motions to compel arbitration.  *Bess v. Check Express*, 294 F.3d 1298, 1302 (11th Cir. 2002).

III.

A.

Before delving into the merits of this dispute, we explain why we have appellate jurisdiction to review the district court's order.  "Ordinarily, courts of appeals have jurisdiction only over 'final decisions' of district courts."  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627 (2009) (quoting 28 U.S.C. § 1291). "The FAA, however, makes an exception to that finality requirement" for certain interlocutory appeals.  *Id.*  Most pertinent here, it permits an interlocutory appeal from a district-court order "denying a petition under section 4 of this title to order arbitration to proceed"  9 U.S.C. § 16(a)(1)(B).  By that provision's plain terms, a litigant who moves to compel arbitration may immediately appeal from a denial of that motion.  *See, e.g.*, *Bess*, 294 F.3d at 1302 (reviewing at interlocutory stage a district court's order denying a motion to compel arbitration).

Here, the parties do not dispute that Kenworth, by moving to compel arbitration, petitioned the district court to order arbitration to proceed under § 4 of the FAA.  Nor is there any dispute that the court denied those motions.  The only issue is whether our authority to immediately review the order denying the motions

5

is affected by the fact that the court denied the motions *without prejudice*. Under these circumstances, it is not.

The text of the FAA provision establishing our jurisdiction does not distinguish between denials with and without prejudice. *See* 9 U.S.C. § 16(a)(1)(B). The text permits us to review any order "denying a petition under section 4 of this title to order arbitration to proceed" and an order denying a petition without prejudice can fall within that description; the phrase "without prejudice" simply permits the moving party to refile the motion again in the future. *Id.*; *see also Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim."). While some housekeeping orders—for example, an order *striking* a motion to compel arbitration, rather than *denying* it, or an order denying a motion to compel arbitration on technical grounds only—may not qualify for immediate appeal under the FAA, that is not the situation here. *See, e.g.*, *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, 538 F.3d 577, 580 (7th Cir. 2008) (declining to exercise jurisdiction over an interlocutory appeal from an order striking a motion to compel arbitration because the district court did not *deny* the motion). In the order here, the district court denied the motions to compel arbitration on the merits.

6

So there is no reason to exclude this denial without prejudice from immediate appellate review under the FAA.

Reviewing this order also aligns with one of the main goals of the FAA, which is "to allow for efficient, streamlined procedures" for arbitration. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Refusing appellate review of all orders denying motions to compel arbitration without prejudice until after a trial court resolves the dispute on the merits would conflict with that goal, as well as the FAA's "strong federal policy in favor of arbitration." *Picard v. Credit Sols., Inc.*, 564 F.3d 1249, 1253 (11th Cir. 2009) (per curiam). We therefore see no reason to not exercise jurisdiction in this case.

Our conclusion that we have jurisdiction to consider this appeal is consistent with that of other circuits to have considered similar cases. At least three of our sister circuits have held that the FAA permits immediate appeal of an order denying a motion to compel arbitration without prejudice. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 737 & 740 (7th Cir. 2010) (reviewing an order denying a motion to compel arbitration "without prejudice," and with instructions that the defendant "could renew its motion if and when" the court resolved other issues); *see also Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 561–62 (4th Cir. 2015) (same); *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 227–28 (3d Cir. 2012) (same); *but see Cont'l Cas. Co.*, 538 F.3d at

7

580 (FAA does not permit immediate appeal of an order *striking*—rather than *denying*—a motion to compel arbitration).  We conclude that we possess jurisdiction to consider this appeal.

B.

On the merits, we begin by providing some background rules about arbitration.  Most fundamentally, "arbitration is a matter of contract."  *Concepcion*, 563 U.S. at 339 (citation omitted).  The FAA provides that a contract containing an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  For agreements that fall within the scope of the FAA, "state law generally governs whether an enforceable contract or agreement to arbitrate exists."  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005).  And "the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

With these principles in mind, we turn to the parties' arguments.  Kenworth contends that the arbitration agreements are valid and enforceable.  Kenworth therefore urges us to reverse the district court's order denying its motions to compel arbitration and to order the district court to send the claims against it to arbitration.  But, recognizing that the summary nature of the district court's order

8

may not provide an adequate basis for us to conclude that the arbitration agreements are valid and enforceable, Kenworth alternatively requests that we vacate the order and remand for the court to issue a reasoned opinion.  Griggs and Brinson, by contrast, argue that this Court should affirm the order denying the motions to compel.  But if this Court cannot affirm due to the summary nature of the district-court order, then Griggs and Brinson also ask us to remand for the district court to supplement its order with the reasoning behind its decision.

As the parties acknowledge, the summary nature of the district court's order poses a challenge for appellate review.  When reviewing summary orders, we may "undertake our own plenary inquiry into the" issues on appeal if "the record is complete and provides an adequate basis for" appellate review.  *Hall v. Holder*, 117 F.3d 1222, 1226 (11th Cir. 1997).  But where summary denials "wholly fail to provide this Court with an opportunity to conduct meaningful appellate review," we will not relieve a district court of its responsibility to decide even purely legal questions in the first instance.  *Danley v. Allen*, 480 F.3d 1090, 1092 (11th Cir. 2007) (per curiam).  Instead, we will vacate the order and remand for the district court to enter a reasoned order that will allow for meaningful appellate review.  *See, e.g.*, *id.*

To ascertain whether this record provides an adequate basis for review, we must examine the parties' specific arguments.  We begin with Griggs's three bases

9

for resisting arbitration.  *First*, Griggs claims that he signed the arbitration agreements in his capacity as a member of A.K.G., and not in his individual capacity.  He asserts that an Alabama Supreme Court decision provides that when a person signs an arbitration clause in his capacity as a member of an organization, the clause does not require arbitration of claims brought in the signatory's individual capacity.  *Clement Contracting Grp., Inc. v. Coating Sys., L.L.C.*, 881 So. 2d 971, 973–75 (Ala. 2003).  Kenworth responds by pointing out that if Griggs did not want to sign the arbitration agreements in his individual capacity, then he could have signed the name of A.K.G.'s managing member (with her permission), or he could have noted under his signature that he signed as a member of A.K.G, as the signatory in *Clement* did—but instead he simply signed his own name.  *Second*, Griggs argues that the arbitration agreements bind A.K.G., not him, because (1) A.K.G. owned the truck, (2) the repair orders designate A.K.G., and not Griggs, as the "SOLD TO" party, and (3) Griggs identified A.K.G. as the purchaser of the parts and services.  Kenworth dismisses those facts as irrelevant and directs us back to the fact that Griggs himself signed the invoices, which contained arbitration clauses.  *Third*, Griggs asserts that his claims against Kenworth do not relate to the invoices that he signed.  According to Griggs, Kenworth issued three separate repair invoices for three separate sets of repairs that it completed; Griggs signed the first two repair invoices but not the third.  And in Griggs's telling, his

10

claims against Kenworth relate to the repairs reflected in the third—and unsigned—invoice. While Kenworth acknowledges that it issued separate invoices, it insists that "each repair was related to, and a continuation of efforts to remedy, the same power loss problem."

Brinson, in turn, asserts that he too is free from the arbitration agreements. Because he never signed the invoices that contained the arbitration agreements, he asserts that the agreements have no bearing on his claims. But Kenworth still seeks to arbitrate Brinson's claims, relying on an Alabama equitable doctrine that it claims binds a non-signatory to arbitration agreements when that non-signatory asserts a legal claim that depends on the existence of the contract containing the arbitration clause. *See Custom Performance, Inc. v. Dawson*, 57 So. 3d 90, 97–98 (Ala. 2010). According to Kenworth, Brinson's claims depend on the existence of the repair invoices—which contained arbitration clauses—because Brinson alleges that Kenworth failed to adequately evaluate and repair the truck, and the invoices document the work that he complains about. But Brinson insists that his claims have nothing to do with the invoices, and that the equitable doctrine therefore does not apply.

The district court, by denying Kenworth's motions to compel arbitration, presumably agreed with Griggs and Brinson that they do not need to arbitrate their claims. But we don't really know. Because the court denied the motions in a

11

summary order, without expressing any factual findings or legal conclusions, we struggle to grasp which of the many reasons offered by Griggs and Brinson the district court found persuasive.  So we are left guessing *why* the district court denied the motions—particularly considering the "liberal federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  Without a firm explanation of the rationale for denying the motions, we cannot conduct meaningful review of the district court's order.  And, although the parties invite us to analyze their factual and legal disputes for the first time on appeal, we are a court of review, and we ordinarily "do not decide in the first instance issues not decided below."  *Zivotofsky v. Clinton*, 566 U.S. 189, 201 (2012) (quoting *Nat'l Collegiate Athletic Ass'n v. Smith,* 525 U.S. 459, 470 (1999)); *see also Clay v. Equifax, Inc.*, 762 F.2d 952, 957 (11th Cir. 1985) ("[A]ppellate review of what the district court did is largely an error-correcting function.").  We therefore vacate the order and remand for the court below to enter a reasoned opinion analyzing the motions to compel arbitration.  *See, e.g.*, *Danley,* 480 F.3d at 1091–92; *Benoay v. Prudential-Bache Sec., Inc.*, 805 F.2d 1437, 1441 (11th Cir. 1986) (per curiam) (remanding for the district court "to conduct a more thorough exploration of the validity of the arbitration issue").

IV.

The summary order that Kenworth appeals is insufficient to allow our appellate review.  We therefore **VACATE** the district court's order denying the motions to compel arbitration and **REMAND** for further proceedings.