# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MICHAEL LINEAR, individually and on behalf of all others similarly situated,<br><br>                              Respondent,<br><br>        v.<br><br>JPAY, LLC, a foreign limited liability company,<br><br>                              Appellant. | No. 59773-0-II<br><br><br>UNPUBLISHED OPINION |

CRUSER, C.J.—Securus Technologies, d/b/a JPay LLC is a company that provides digital communication and media services to inmates through a contract it holds with the Department of Corrections. Linear, an offender housed in a Department of Corrections prison in Washington, brought a Consumer Protection Act claim against JPay because Linear was unable to access multiple videos he had purchased through JPay's services and JPay failed to resolve the issue and refused to tender a refund. JPay appeals the trial court's order denying JPay's second motion to compel arbitration without prejudice. JPay contends that because Linear assented to the amended terms of service, which were not addressed by the initial arbitrator, and because Linear did not challenge the arbitration agreement's delegation clause, the trial court was required to compel arbitration. Linear contends that assent is immaterial because the arbitrator already determined that

all 16 versions of JPay's terms of service were unconscionable and unenforceable and therefore the trial court did not err by denying the motion to compel arbitration.

We conclude that the trial court's order denying JPay's motion to compel arbitration is merely a housekeeping order intended to table the question of whether arbitration was required. The trial court clearly contemplated that JPay would file a new motion specifically asking it to determine whether there had been contract formation. Accordingly, this order is not appealable and we dismiss this appeal.

FACTS

I. BACKGROUND AND FIRST MOTION TO COMPEL ARBITRATION

Lonnie Burton and Michael Linear are incarcerated individuals serving sentences in the Washington Department of Corrections (DOC). DOC contracts with JPay and their parent company Securus Technologies (collectively JPay) to provide digital communication and media services to inmates.

In 2020, Burton and Linear filed a class action lawsuit against JPay alleging violations of the Washington Consumer Protection Act (CPA), ch. 19.86 RCW, and for the common law torts of conversion and unjust enrichment. According to the complaint, JPay's services are the only means available for individuals incarcerated in DOC to communicate electronically with family members, friends, and legal counsel. As an arbitrator later found, inmates access JPay's services through kiosks in DOC's facilities. As a precondition to accessing any content on a kiosk, an inmate must accept JPay's terms of service. Inmates were allowed to access the kiosks for 10 minutes per visit, and interruptions were common. In order to read and understand the terms of service, an inmate would be required to return to the kiosk and wait in line to do so on "5-20

occasions." Clerk's Papers (CP) at 179. JPay's terms of service included an arbitration clause in which inmates agree to resolve any dispute in commercial arbitration in Florida. Based on these facts, Burton and Linear alleged that inmates are denied a meaningful choice between isolation from online communication with legal counsel, family, and friends and agreeing to JPay's terms of service, rendering the agreement procedurally unconscionable.

In response to the lawsuit, JPay filed a motion to compel arbitration pursuant to the arbitration agreement in its 13th version of its terms of service (TOS 13). JPay contended that the trial court must compel arbitration because Burton and Linear challenged only their assent to the contract as a whole rather than the delegation or arbitration clause and they necessarily accepted the terms of service and agreed to arbitrate disputes when they used JPay's services.

The trial court determined that the arbitration and delegation clauses in JPay's terms of service compelled arbitration "as required by [*Rent-a-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct 2772, 177 L. Ed. 2d 403 (2010)]." *Id.* at 104. Accordingly, the trial court granted JPay's motion to compel arbitration and stayed the proceedings in the trial court pending the completion of arbitration. The record does not reflect that the trial court addressed the question of whether Linear and Burton assented to the terms of service, and thus entered into a contract with JPay, prior to granting the motion to compel.

## II. ARBITRATION

Linear's and Burton's cases were bifurcated at arbitration. Because Burton's claim succeeded on the merits, this appeal concerns only Linear's claim. During the time between the order compelling arbitration and arbitration, JPay amended its terms of service three times. The arbitration provisions in TOS 13 and the final amended term of service, TOS 16, are identical

3

except that TOS 16 provides that disputes concerning the agreement's waiver of "(i) class action lawsuits, (ii) representative or class-wide arbitration, (iii) private attorney general claims, or (iv) requests for public injunctive relief are to be determined solely and exclusively by the Federal District Court located in the Northern District of Texas" rather than Florida. *Compare id.* at 365, *with id.* at 75. And TOS 16 provides that, to the extent that state law applies to the arbitration, Texas law, rather than Florida law, will govern. *Compare id.* at 366, *with id.* at 75.

Linear filed a motion with the arbitrator to declare all of JPay's terms of service unconscionable. However, the arbitrator only dealt with TOS 13 and declined to rule on the enforceability of the subsequent terms of service because the superior court had not addressed "whether [Linear] assented to subsequent Terms of Service," and because the question of contract formation is "reserved for the courts." *Id.* at 175. As to TOS 13, the arbitrator determined that it was both procedurally and substantively unconscionable. As a result, the arbitrator no longer retained jurisdiction to decide the merits of the claims and, accordingly, remanded the matter to the superior court.

### III. SECOND MOTION TO COMPEL ARBITRATION

Before the superior court, Linear filed an amended complaint. Instead of filing an answer to the amended complaint, JPay filed another motion to compel arbitration—this time in relation to the subsequent terms of service (TOS 14-16). In its motion to compel arbitration, JPay argued that because the terms of service contained a delegation clause that delegated some threshold determinations to the arbitrator including the " 'scope, validity, or enforceability' " of the arbitration agreement, the arbitrator was responsible for determining whether the agreement was enforceable and the trial court was required to compel arbitration. *Id.* at 317. JPay asserted several

times that the question of Linear's assent to the amended terms of service remained an open question in need of settlement. However, rather than expressly ask the trial court to settle that question, JPay simply argued that by "accepting" the terms of service (which JPay acknowledged Linear had no choice but to do in order to utilize JPay's service), Linear necessarily assented to the terms of service. *Id.* at 312-313, 316, 319. The trial court squarely asked JPay, "So, is it then JPay's position that this Court needs to make a determination through some process of whether [Linear] assented to fourteen, fifteen and sixteen before it goes back to arbitration?" Verbatim Rep. of Proc. (VRP) at 25. JPay responded that the "technical answer" was yes, but that the trial court did not "need to get there" because the arbitration provision in the terms of service contained "a broad delegation clause" that Linear "completely failed to challenge." *Id.* at 25-26. JPay went on to say that "given [Linear's] failure to challenge the delegation clause, this Court can simply now enter an order compelling arbitration. No other process has to happen. They've failed to challenge [the delegation clause] and so therefore they waived their right [to contest contract formation]." *Id.* at 26.

The superior court denied JPay's motion to compel arbitration "without prejudice." CP at 706. The trial court made a finding of fact, which is unchallenged in this appeal, that Linear denied that he assented to the arbitration clauses in each of the terms of service. The trial court concluded that "[a]ny determination regarding the Plaintiff's assent to TOS 14, 15, and/or 16 is a determination on a substantive issue that may be dispositive in this matter" and JPay "has not answered the Amended Complaint (second) nor properly brought a dispositive motion before this court to resolve the issue of the parties' mutual assent to TOS 14, 15 or 16." *Id.* In its oral remarks on its denial of JPay's motion, the trial court stated

5

> In essence, Counsels, the Court has to deal with the whole issue of whether there was an assent to arbitrations clauses in the fourteen, fifteen and sixteen versions and the Court's *going to be interested to hear* how those may be different than the thirteen—well, the thirteen, fourteen, fifteen and sixteen that the arbitrator looked at when the Court—when the arbitrator did its brief review of those.

VRP at 38 (emphasis added).

JPay appeals the trial court's order denying its motion to compel arbitration without prejudice.

ANALYSIS

I. ARBITRATION GENERALLY

Under the Federal Arbitration Act (FAA), Title 9 U.S.C., a court presented with a petition to compel arbitration "shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Under the Uniform Arbitration Act, codified in ch. 7.04A RCW, the court "shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate," and an arbitrator "shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." RCW 7.04A.060(2), (3).

Pursuant to RCW 7.04A.070(1), when a party moves to compel arbitration and the other party opposes the motion, the court must " 'proceed summarily to decide the issue' " by determining whether an agreement to arbitrate exists. *Marcus & Millichap Real Est. Inv. Servs. of Seattle, Inc. v. Yates, Wood & MacDonald, Inc.*, 192 Wn. App. 465, 472, 369 P.3d 503 (2016). A court does this by " 'considering affidavits, pleadings, discovery, and stipulations submitted by the

parties.' " *Id.* (internal quotation marks omitted) (quoting *J.A. Walker Co., Inc. v. Cambria Corp.*, 159 P.3d 126, 130 (Colo. 2007)). An evidentiary hearing is necessary only if the material facts necessary to determine the issue are disputed. *Id.*

Although the parties agree that the FAA governs the issue of arbitrability, the question of whether an agreement to arbitrate exists is governed by state contract law. *See McKee v. AT&T Corp.*, 164 Wn.2d 372, 383, 191 P.3d 845 (2008) ("When the validity of an agreement to arbitrate is challenged, courts apply ordinary state contract law."). A valid contract cannot be formed without mutual assent, and "[t]his rule applies to the formation of an arbitration agreement just as it does to the formation of any other contract." *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 48, 470 P.3d 486 (2020). The question of contract formation (including assent) is reserved to the trial court. *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022). This is true even in the face of a delegation clause. *Id.*

Stated another way, the presence of a delegation clause that delegates the questions of arbitrability and enforceability of contract terms to an arbitrator is immaterial to the question of contract formation, which is a threshold question. A party asserting that no contract (and, thus, no agreement to arbitrate) had been formed is not required to challenge a delegation clause within an arbitration agreement as a precondition to obtaining a ruling from the trial court on the question of mutual assent. Therefore, the mere fact that there is a delegation clause in the parties' agreement is not sufficient as a matter of law to require this court or the trial court to compel arbitration.

## II. ORDER NOT APPEALABLE

With regard to appealability, an order denying a motion to compel arbitration is generally appealable under RCW 7.04A.280(1)(a). However, in *Janiga v. Questar Capital Corp.*, the court

distinguished between denials of a motion to compel arbitration for "housekeeping" purposes that give rise to a " 'delay incident to an orderly process,' " which are not appealable, and the order at issue in that case which was denied because the court believed the defendants had not established that a contract existed. 615 F.3d 735, 740 (7th Cir. 2010) (quoting *Cont'l Cas. Co. v. Staffing Concepts, Inc.*, 538 F.3d 577 (7th Cir. 2008)). The court stated that where an order denying arbitration is merely a housekeeping order designed to give the trial court an opportunity to address other matters related to the subject of the dispute, "[trial] courts must be given the discretion to manage their cases." *Id.* Although we are not bound by the decision in *Janiga*, we find its reasoning persuasive.

Accordingly, we agree with the *Janiga* court that an order that "incidentally delay[s] a decision on a motion to [compel] arbitration" is not immediately appealable. *Id. Janiga* noted that in *Continental Casualty*, "the district court struck without prejudice the defendants' motion to dismiss or stay the action pending arbitration" so that the court could address pending motions addressing personal jurisdiction and venue. *Id.*

The order on appeal in this case, when read in its proper context, does not reflect a decision by the trial court to deny arbitration on the merits of the request to compel. Rather, it reflects the trial court declining to consider the request at that time pending a determination on the question of mutual assent. The trial court advised JPay that it did not believe that JPay, in its written motion, specifically asked the trial court "to resolve the issue of the parties' mutual assent to TOS 14, 15 or 16." CP at 706.

The trial court further stated that without a specific request to rule on the question of mutual assent it was declining, *at that time*, to consider the request to submit the matter to arbitration. The

8

trial court went on to explain the steps JPay could take to remedy the problem—to wit, that it could bring a motion specifically seeking a determination of whether Linear assented to the amended terms of service. Moreover, the trial court's oral remarks clearly show that it anticipated it would be asked to resolve the question of assent and that it was "going to be interested to hear" how the amended terms of service differed from TOS 13 on this question. VRP at 38. This, in our view, demonstrates that this order is not a true order denying a motion to compel arbitration as contemplated by RCW 7.04A.280(1)(a) but rather an interim order putting the question of compelled arbitration on hold pending the trial court's determination of contract formation.[1] We therefore hold that the order on review is not appealable.

CONCLUSION

The order on review is a housekeeping order intended to give the trial court the opportunity to resolve the question of Linear's assent to the amended terms of service and was not intended to be a final determination on the arbitrability of the amended terms of service. Accordingly, the order is not appealable and we dismiss this appeal.

---

[1] We note that RCW 7.04A.070(1) compels the trial court, when faced with a motion to compel arbitration, to determine the existence of an arbitration agreement by considering the affidavits, pleadings, discovery, and stipulations of the parties. RCW 7.04A.070(1) implicitly requires the trial court to resolve the question of mutual assent, and it does not require an explicit motion from a party asking for a determination on assent nor does it require the party to have filed an answer to the complaint. If the material facts necessary to determine whether an agreement to arbitrate has been formed are in dispute, the trial court may order an evidentiary hearing where more development of the record and arguments is required to resolve the question. *Marcus and Millichap*, 192 Wn. App. at 472. JPay, however, does not ask us to reverse the trial court on the basis that the trial court failed to comply with RCW 7.04A.070(1), nor does JPay even mention this statute in its brief to this court.

No. 59773-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, C.J.

We concur:

GLASGOW, J.

PRICE, J.