IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| KIRANDEEP CZERWINSKI, | ) | No. 79665-8-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| PINNACLE PROPERTY | ) | |
| MANAGEMENT SERVICES, LLC, a | ) | UNPUBLISHED OPINION |
| Delaware LLC; and HEATHER LAGAT, | ) | |
| individually and the marital community | ) | |
| comprised thereof, | ) | |
| | ) | |
| Appellants. | ) | FILED: July 1, 2019 |

SCHINDLER, J. — Kirandeep Czerwinski filed a lawsuit against Pinnacle Property

Management Services LLC.  Pinnacle filed a motion to compel arbitration.  The court

denied the motion to compel arbitration on the grounds of lack of mutual assent.  We

reverse and remand to enter an order to compel arbitration.

Employment with Pinnacle

On May 3, 2016, Kirandeep Czerwinski applied for an assistant property

manager position with Pinnacle Property Management Services LLC.  Applicants submit

the employment application to Pinnacle electronically.  The employment application

requires an applicant to sign an agreement to arbitrate "employment-related legal

claims," the "Issue Resolution Agreement." The employment application states, in pertinent part:

> Dear Pinnacle Property Management Services, LLC Applicant:
>
> Thank you for considering employment with Pinnacle Property Management Services, LLC. . . .
>
> . . . .
>
> We appreciate your interest in Pinnacle Property Management Services, LLC and hope you decide to start the application process by signing the Issue Resolution Agreement and completing the employment application.
>
> **If you wish to be considered for employment you must read and sign the following Issue Resolution Agreement. This Agreement requires you to arbitrate any legal dispute related to your application for employment, employment with, or termination from Pinnacle Property Management Services, LLC. You will not be considered as an applicant until you have signed the Agreement. By signing this Issue Resolution Agreement, you acknowledge receipt of this ISSUE RESOLUTION RULES. . . . . You will note that if you sign at this time, you do have three (3) days to withdraw your consent. You may, of course, take the package with you and return with it signed, if you wish to continue your application process.**[1]

Czerwinski completed and submitted the application electronically. Czerwinski accepted the assistant property manager job and worked for Pinnacle from May 23, 2016 until February 24, 2017.

Motion To Compel Arbitration

On November 1, 2017, Czerwinski filed a lawsuit against Pinnacle. Czerwinski alleged she suffered an on-the-job head injury. Czerwinski alleged violations of the Washington law against discrimination, chapter 49.60 RCW; the Washington Minimum Wage Act, chapter 49.46 RCW; and the Washington industrial welfare act, chapter 49.12 RCW.

---

[1] Boldface in original.

2

Pinnacle filed a motion to stay the lawsuit and compel arbitration. Pinnacle argued the agreement required submitting the claims to binding arbitration. Pinnacle submitted the declaration of Pinnacle Human Resources Vice President Erinn Cassidy and the 15-page Issue Resolution Agreement (Arbitration Agreement) that Czerwinski signed on April 8, 2016. The signature page of the Arbitration Agreement shows the name "Kirandeep Czerwinski" typed in the signature line and the last four digits of her Social Security number. The box to check "Agreed" is blank. The signature line for a Pinnacle representative is blank.

Czerwinski argued the Arbitration Agreement was not enforceable because she did not sign or agree to it. Czerwinski also argued the agreement is procedurally and substantively unconscionable. Czerwinski filed a declaration. Czerwinski's attorney asserted the personnel file produced by Pinnacle does not contain a copy of the Arbitration Agreement. The personnel file contains "[s]creening answers" for the online application. For the "Universal Application – Arbitration Clause" section, the online questions are in quotation marks and the applicant's answers follow. The notation states:

> "By checking the box, I agree to the statements on the previous page." I Agree
> "Signature:" Kirandeep Czerwinski
> "Date:" 03/13/2016.

In reply, Pinnacle argued that the record established Czerwinski signed the Arbitration Agreement and accepted the job and that not checking the "Agreed" box on the employment application did not show a failure of mutual assent. Pinnacle also argued the Arbitration Agreement was not procedurally or substantively unconscionable. Cassidy submitted a copy of an Arbitration Agreement Czerwinski signed and dated

3

March 13, 2016 and again on April 8, 2016. The March 13 Arbitration Agreement shows Czerwinski's name typed in the signature line and the last four digits of her Social Security number. The "Agreed" box is unchecked and the signature line for a Pinnacle representative is blank.

The court denied the motion to compel arbitration. The court concluded the Arbitration Agreement was unenforceable because Pinnacle did not sign and agree to be bound by its terms.

Mutual Assent

Pinnacle appeals, asserting the court erred by denying the motion to compel arbitration for lack of mutual assent because Pinnacle did not sign the Arbitration Agreement.

We review a trial court's decision to compel or deny arbitration de novo. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 797, 225 P.3d 213 (2009). " '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.' " Hill v. Garda CL Nw., Inc., 179 Wn.2d 47, 53, 308 P.3d 635 (2013)[2] (quoting Satomi, 167 Wn.2d at 810). "These types of disputes go to the validity of the contract and are preserved for judicial determination, as opposed to arbitrator determination, unless the parties' agreement clearly and unmistakably provides otherwise." Hill, 179 Wn.2d at 53.

A valid contract requires mutual assent. Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 388, 858 P.2d 245 (1993). " 'It is essential to the formation of a contract that the parties manifest to each other their

---

[2] Internal quotation marks omitted.

mutual assent to the same bargain at the same time. Mutual assent generally takes the form of an offer and an acceptance.' " Fire Prot. Dist. No. 12, 122 Wn.2d at 388 (quoting Pac. Cascade Corp. v. Nimmer, 25 Wn. App. 552, 555-56, 608 P.2d 266 (1980)).

We conclude the court erred by concluding the Arbitration Agreement was not enforceable without Pinnacle's signature. Washington courts have consistently rejected the argument that a written agreement lacked mutual assent if the agreement is not signed by the party seeking to enforce it. See, e.g., Shelcon Constr. Grp., LLC v. Haymond, 187 Wn. App. 878, 894, 351 P.3d 895 (2015) (holding that a "valid written agreement can exist without one party's signature"); Marcus & Millichap Real Estate Inv. Servs. of Seattle, Inc. v. Yates, Wood & MacDonald, Inc., 192 Wn. App. 465, 474, 369 P.3d 503 (2016) (a party may consent to arbitration without signing an arbitration clause).

Czerwinski's Electronic Signature

We also conclude Czerwinski did not meet her burden to present evidence showing she did not sign and enter into the agreement to arbitrate.

If the parties to a lawsuit dispute the validity of an agreement to arbitrate, "the court shall proceed to summarily decide the issue." RCW 7.04A.070(1); Marcus & Millichap, 192 Wn. App. at 472. In summarily deciding the validity of an agreement, the trial court applies the summary judgment standard and views the evidence in the light most favorable to the nonmoving party. Marcus & Millichap, 192 Wn. App. at 473. We review a motion to compel arbitration and summary judgment de novo. Marcus & Millichap, 192 Wn. App. at 473.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." CR 56(c); see also Owen v. Burlington N. & Santa Fe R.R., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). The moving party has the burden of proving there is no genuine issue of material fact. Balise v. Underwood, 62 Wn.2d 195, 199, 381 P.2d 966 (1963). If the moving party meets this burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial. Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Summary judgment is appropriate where there is no genuine issue of material fact and reasonable minds could reach but one conclusion. Barrie v. Hosts of Am., Inc., 94 Wn.2d 640, 642, 618 P.2d 96 (1980). " '[M]ere allegations, denials, opinions, or conclusory statements' do not establish a genuine issue of material fact." Strauss v. Premera Blue Cross, 1 Wn. App. 2d 661, 681, 408 P.3d 699 (2017)[3] (quoting Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wn. App. 736, 744, 87 P.3d 774 (2004)), review granted, 190 Wn.2d 1025, 419 P.3d 409 (2018). "Lack of recall is not sufficient to controvert clear opposing evidence on a summary judgment motion." Overton v. Consol. Ins. Co., 145 Wn.2d 417, 431, 38 P.3d 322 (2002).

As the party seeking to enforce the contract, Pinnacle must prove the existence of a contract and the objective manifestation of the intent of the other party to be bound by the contract. Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 944, 640 P.2d 1051 (1982). If Pinnacle meets its burden, the

---

[3] Alteration in original.

burden then shifts to "the party seeking to avoid the contract to prove a defense to the contract's enforcement." Shopland Supermarket, 96 Wn.2d at 944.

In support of the motion to compel arbitration, Pinnacle Human Resources Vice President Cassidy testified that to "be considered for hire" and "as a condition of employment," "all applicants to Pinnacle are asked to review and sign the [Arbitration] Agreement." Cassidy testified:

> In 2016, when Ms. Czerwinski applied for employment at Pinnacle, all Pinnacle applicants accessed application documents, including the [Arbitration] Agreement, on an electronic application tracking system called PeopleAnswers, which is operated by a vendor named Infor. Applicants do not physically sign the [Arbitration] Agreement and other application documents. Instead, applicants type in their names to acknowledge acceptance of the document. They also type in the last four digits of their Social Security Number to authenticate their electronic signature. Pinnacle does not require applicants to check a box to agree to the [Arbitration] Agreement. Signing the document is sufficient for them to agree to the Agreement and proceed with the application process.

Cassidy testified that "the personnel file of Kirandeep Czerwinski . . . contains a 15-page [Arbitration] Agreement that is dated and signed on April 8, 2016" with Czerwinski's typed name and the last four digits of her Social Security number. Cassidy submitted the Arbitration Agreement showing Czerwinski "authenticate[d] her electronic signature" by typing "the last four digits of her Social Security Number."

Czerwinski admitted she "completed my employment application with Pinnacle electronically." Czerwinski testified, "I recall logging onto Pinnacle's website from home, looking through job posts, clicking on the position I was interested in, and completing an on-line application, which included attaching my resume." Czerwinski said she received an e-mail "thanking me for my application, and providing me a link to PeopleAnswers. When I went to the PeopleAnswers site, I was required to complete a few tests,"

including "what appeared to be some kind of personality test, a math test, and a series of questions about how I would handle certain situations."

Czerwinski testified she did not recall seeing the Arbitration Agreement:

> I do not recall ever seeing those materials — the Agreement nor the Rules — prior to or while applying to work for Pinnacle, or at any time during my employment with Pinnacle. I do not recall seeing those materials before my attorney showed them to me, well after my employment with Pinnacle ended. Nor do I recall completing the "signature" page to the Agreement, or otherwise agreeing to be bound by the Agreement.

Cassidy submitted a reply declaration, stating, "Due to an administrative error, Ms. Czerwinski's 15-page [Arbitration] Agreement signed on April 8, 2016, was inadvertently omitted when her personnel file was originally collected for transmittal to her attorney." Cassidy testified Czerwinski signed the Arbitration Agreement two times—first on March 13, 2016 and again on April 8, 2016.

> I understand that Ms. Czerwinski's counsel has questioned why her [Arbitration] Agreement shows an execution date of April 8, 2016, while another page of her personnel file (PNCL000002 in Exhibit 1 to [Czerwinski's attorney]'s declaration) states a different date, March 13, 2016. That is because she electronically signed the arbitration agreement twice. Attached hereto as Exhibit 2 is a true and correct copy of Ms. Czerwinski's [Arbitration] Agreement signed on March 13, 2016. I believe this happened because Ms. Czerwinski actually created two application profiles in the PeopleAnswers application tracking system, which have some slight variations, including a different spelling of her first name, source of referral, and desired work location. We discovered the second arbitration agreement in the course of reviewing Ms. Czerwinski's opposition brief and in preparing to reply to her arguments. I have provided these newly discovered documents to counsel, and I understand they will be produced to Ms. Czerwinski's lawyer today.[4]

The record establishes Pinnacle met its burden to prove the existence of the contract and Czerwinski's objective manifestation to be bound by the contract. Pinnacle submitted a copy of the Arbitration Agreement. Czerwinski signed the Arbitration

---

[4] Boldface omitted.

Agreement electronically with her full name and the last four digits of her Social Security number. Shopland Supermarket, 96 Wn.2d at 944 (a voluntary signature on a contract establishes an objective manifestation of the intent to be bound).

"The party opposing arbitration bears the burden of showing that the agreement is not enforceable." Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 302, 103 P.3d 753 (2004). A party may assert standard contract defenses to challenge enforceability of an arbitration agreement. McKee v. AT&T Corp., 164 Wn.2d 372, 383, 191 P.3d 845 (2008).

Czerwinski did not meet her burden to prove a defense to enforcement of the Arbitration Agreement. Czerwinski asserts she "has no recollection of reviewing the Agreement or completing its signature block." But her lack of recall is not sufficient to controvert the evidence that she signed the Arbitration Agreement during the application process. Overton, 145 Wn.2d at 431. Czerwinski also did not present any evidence of fraud. Shopland Supermarket, 96 Wn.2d at 944 ("A party to a contract which [s]he has voluntarily signed cannot, in the absence of fraud, deceit, or coercion be heard to repudiate h[er] own signature.").

Czerwinski claims that because she did not check the box marked "Agreed," she did not "agree to be bound by the Agreement." But Cassidy testified that Pinnacle "does not require applicants to check a box to agree" and "[s]igning the document is sufficient for them to agree to the Agreement and proceed with the application process." Further, the signature page unequivocally states:

> I recognize that if I sign the Agreement and do not withdraw within three
> (3) days of signing, I will be required to arbitrate any and all employment-
> related claims I may have against Pinnacle Property Management

9

Services, LLC, whether or not I become employed by Pinnacle Property Management Services, LLC.[5]

Because we conclude the parties agreed to arbitrate, we address whether the Arbitration Agreement is procedurally or substantively unconscionable.

Procedural and Substantive Unconscionability

The Pinnacle Arbitration Agreement states the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 through 16, governs. Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts must indulge every presumption in favor of arbitration under the FAA. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983), superseded on other grounds by 9 U.S.C. § 16(b)(1). Washington also has a strong public policy favoring arbitration. Adler v. Fred Lind Manor, 153 Wn.2d 331, 341 n.4, 103 P.3d 773 (2004).

The existence of an unconscionable agreement is a question of law. Zuver, 153 Wn.2d at 302-03. Washington recognizes two categories of unconscionability—procedural and substantive. Zuver, 153 Wn.2d at 303. Procedural unconscionability is " 'the lack of [a] meaningful choice, considering all the circumstances surrounding the transaction.' " Zuver, 153 Wn.2d at 303 (quoting Nelson v. McGoldrick, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). Substantive unconscionability " 'involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh.' " Zuver, 153 Wn.2d at 303 (quoting Schroeder v. Fageol Motors, Inc., 86 Wn.2d 256, 260, 544 P.2d 20 (1975)).

---

[5] Emphasis added.

Procedural Unconscionability

Czerwinski contends the Arbitration Agreement is procedurally unconscionable because she did not have a reasonable opportunity to understand the terms and the terms are unclear. To determine whether an agreement is procedurally unconscionable, we examine the following circumstances surrounding the parties' transaction to determine whether the party claiming unconscionability lacked a meaningful choice: (1) The manner in which the contract was entered, (2) whether the party claiming procedural unconscionability had a reasonable opportunity to understand the terms of the contract, and (3) whether the important terms were hidden in a maze of fine print. Zuver, 153 Wn.2d at 303. " '[T]hese three factors [should] not be applied mechanically without regard to whether in truth a meaningful choice existed.' " Zuver, 153 Wn.2d at 303[6] (quoting Nelson, 127 Wn.2d at 131).

Czerwinski contends she did not have a reasonable opportunity to understand the terms of the Arbitration Agreement because it is "fifteen pages long" and "does not provide applicants with contact information for a Pinnacle representative to whom they may direct questions about the Agreement."

The record shows Pinnacle provided the Arbitration Agreement to Czerwinski in an online portal for her to read and sign before she was hired. Pinnacle did not require Czerwinski to return the Arbitration Agreement immediately. See Zuver, 153 Wn.2d at 306 (applicant who signed agreement 15 days after offer of employment had "ample opportunity" to address "any concerns or questions she might have had about the terms of the agreement"). The Arbitration Agreement includes the address of Pinnacle's

---

[6] Alteration in original.

human resources department. The Arbitration Agreement states, in bold print, "**You will note that if you sign at this time, you do have three (3) days to withdraw your consent. You may, of course, take the package with you and return with it signed, if you wish to continue your application process.**" The Arbitration Agreement also states, in bold print, "**The Issue Resolution Agreement and the Issue Resolution Rules affect your legal rights. You may wish to seek legal advice before signing this Issue Resolution Agreement.**"

Czerwinski contends the Arbitration Agreement is unconscionable because it has "unclear terms" and the average person could not understand them. We disagree. The first 4 pages of the Arbitration Agreement explain Pinnacle's arbitration procedure and states that by signing the agreement, the applicant "further agree[s] that if I commence arbitration, it will be conducted in accordance with the 'Issue Resolution Rules.' " The Arbitration Agreement includes 10 pages of Issue Resolution Rules in regular font for the applicant to review.

Czerwinski argues an average person would not understand that by signing the Arbitration Agreement, the applicant was agreeing to the terms of the Arbitration Agreement or the Issue Resolution Rules. But the agreement gives the applicant a meaningful choice to decide whether to sign. The Arbitration Agreement clearly states that by signing, the applicant agrees she "will be required to arbitrate any and all employment-related claims." Further, the agreement makes clear that an applicant who does not agree to arbitrate "no longer will be eligible for employment at Pinnacle." When read as a whole, the terms of the Arbitration Agreement are clear and not "set forth in such a way that an average person could not understand them." Zuver, 153

12

Wn.2d at 306-07. We conclude the Arbitration Agreement is not procedurally unconscionable.

<u>Substantive Unconscionability</u>

Czerwinski contends the terms of the Arbitration Agreement are substantively unconscionable. " 'Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh.' " <u>Zuver</u>, 153 Wn.2d at 303 (quoting <u>Schroeder</u>, 86 Wn.2d at 260). " 'Shocking to the conscience', 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." <u>Nelson</u>, 127 Wn.2d at 131 (quoting <u>Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention</u>, 16 Wn. App. 439, 444, 556 P.2d 552 (1976)).

<u>(1) Time Limit To File Claim</u>

Czerwinski contends the one-year time limitation to file a claim is substantively unconscionable. The Arbitration Agreement states:

> The "Arbitration Request Form" shall be submitted not later than **one year** after the date on which the Employee knew, or through reasonable diligence should have known, of the facts giving rise to the Employee's claim(s). The failure of an Employee to initiate an arbitration within the one-year time limit shall constitute a **waiver** with respect to that dispute relative to that Employee. Notwithstanding anything stated herein to the contrary, this clause will not affect tolling doctrines under applicable state laws or the employee's ability to arbitrate continuing violations.[7]

"Generally, a private statute of limitations will control over general statutes of limitation, 'unless prohibited by statute or public policy, or unless [it is] unreasonable.' " <u>Gandee v.</u>

---

[7] Boldface in original.

LDL Freedom Enters., Inc., 176 Wn.2d 598, 606, 293 P.3d 1197 (2013)[8] (quoting Adler, 153 Wn.2d at 356).

Pinnacle argues that because Czerwinski filed her lawsuit within the one-year limitation and Pinnacle agreed to waive the limitation on "any of her claims [that] may fall outside of that period," her challenge to the one-year limitation is moot. We agree. "An appeal is moot where it presents purely academic issues and where it is not possible for the court to provide effective relief." Klickitat County Citizens Against Imported Waste v. Klickitat County, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993).

### (2) Confidentiality

Czerwinski contends the provision requiring confidentiality is substantively unconscionable. The Arbitration Agreement states:

> Unless otherwise disallowed by statute, all aspects of an arbitration pursuant to these Issue Resolution Rules, including the hearing and record of the proceeding, shall be confidential and shall not be open to the public, except (i) to the extent both Parties agree otherwise in writing; (ii) as may be appropriate in any subsequent proceeding between the parties, or (iii) as may otherwise be appropriate in response to a governmental agency or legal process.
>
> All settlement negotiations, mediations, and the results thereof shall be confidential.

In Zuver, the Washington Supreme Court held that a provision in an employee arbitration agreement that required " '[a]ll arbitration proceedings, including settlements and awards, under the Agreement will be confidential' " is substantively unconscionable. Zuver, 153 Wn.2d at 312 n.9, 315. The court stated, " '[I]n the context of individual

---

[8] Alteration in original; internal quotations omitted.

14

statutory claims, a lack of public disclosure may systematically favor companies over individuals.' " Zuver, 153 Wn.2d at 314-15 (quoting Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1477 (D.C. Cir. 1997)). The court concluded the confidentiality provision in the employee arbitration agreement "benefits only" the employer, "hampers an employee's ability to prove a pattern of discrimination or to take advantage of findings in past arbitrations," and "undermines an employee's confidence in the fairness and honesty of the arbitration process." Zuver, 153 Wn.2d at 315.

Pinnacle contends that unlike Zuver, the confidentiality provision here contains "meaningful exceptions to confidentiality," including that the parties may agree to release information from the arbitration. But Pinnacle does not explain how the exceptions resolve the concerns articulated in Zuver. We conclude that under Zuver, the confidentiality provision is substantively unconscionable.

### (3) Discovery Limitations

Czerwinski argues that the provisions limiting discovery are substantively unconscionable. "It is well recognized that discovery generally is more limited in arbitration than in litigation." Schuster v. Prestige Senior Mgmt., LLC, 193 Wn. App. 616, 644, 376 P.3d 412 (2016). Here, the Arbitration Agreement limits the number of interrogatories, document requests, and depositions. Issue Resolution Rule 7, "Discovery," states, in pertinent part:

a.  INTERROGATORIES/DOCUMENT REQUESTS

> Each Party may propound one set of 20 interrogatories (including subparts) to the opposing Party. Interrogatories are written questions asked by one party to the other, who must answer under oath. Such interrogatories may include a request for all documents upon which the responding party relies in support of its answers to

the interrogatories. Answers to interrogatories must be served within 21 calendar days of receipt of the interrogatories.

b. DEPOSITIONS

A deposition is a statement under oath that is given by one party in response to specific questions from the other party, and usually is recorded or transcribed by a court reporter. Each Party shall be entitled to take the deposition of up to three (3) individuals of the Party's choosing. The Party taking the deposition shall be responsible for all costs associated therewith, such as the cost of a court reporter and the cost of a transcript.

However, the Arbitration Agreement also allows the arbitrator to permit additional discovery upon "a showing of substantial need":

Upon the request of any Party and a showing of substantial need, the Arbitrator may permit additional discovery, but only if the Arbitrator finds that such additional discovery is not overly burdensome, and will not unduly delay conclusion of the arbitration.[9]

Czerwinski cites Woodward v. Emeritus Corp., 192 Wn. App. 584, 368 P.3d 487 (2016), to argue the discovery limitation "presents an overwhelming advantage to the employer." In Woodward, the estate filed a lawsuit against their mother's assisted living facility alleging negligence, elder abuse, and wrongful death. Woodward, 192 Wn. App. 589-90. We affirmed denial of the motion to compel arbitration and held that the arbitration agreement was "substantively unconscionable given the nature of the claims." Woodward, 192 Wn. App. at 589, 607. We concluded the arbitration rules in the arbitration agreement were "inherently unsuited to the nature and complexity of the estate's claims." Woodward, 192 Wn. App. at 607. Here, unlike in Woodward, the discovery provisions are not unsuited to the nature and complexity of the employment claims.

---

[9] Boldface omitted.

16

(4) Sanctions

Czerwinski contends that the provision allowing the arbitrator to award sanctions is substantively unconscionable. The Arbitration Agreement provides:

> The Arbitrator shall have the power to award sanctions against a Party for the Party's failure to comply with these Issue Resolution Rules or with an order of the Arbitrator. These sanctions may include assessment of costs, prohibitions of evidence, or, if justified by a Party's wanton or willful disregard of these Issue Resolution Rules, an adverse ruling in the arbitration against the Party who has failed to comply.

Czerwinski contends the sanctions provision is similar to the unconscionable "loser pays" provision in Gandee. In Gandee, the arbitration agreement provided that the " 'prevailing party in any action or proceeding related to this Agreement shall be entitled to recover reasonable legal fees and costs, including attorney's fees which may be incurred.' " Gandee, 176 Wn.2d at 602. The Washington Supreme Court concluded the "loser pays" provision was "one sided and overly harsh" because it "serves to benefit only [the lender] and, contrary to the legislature's intent, effectively chills [the borrower]'s ability to bring suit under the CPA."[10] Gandee, 176 Wn.2d at 606.

We conclude the sanctions provision in the Arbitration Agreement is not substantively unconscionable. Unlike in Gandee, the sanctions provision is not one-sided or overly harsh. The sanctions provision does not favor one party over the other or allow the arbitrator to "sanction a party for filing a lawsuit in the first instance." The provision states the arbitrator may award sanctions against either party for "failure to comply with these Issue Resolution Rules or with an order of the Arbitrator." The provision does not benefit only Pinnacle but serves to ensure both parties engage in the arbitration process in accordance with the rules.

---

[10] Consumer Protection Act, chapter 19.86 RCW.

Czerwinski argues the arbitrator could sanction her for challenging the "enforceability of the Agreement" in court. But the effect of the sanctions provision is "at this point, purely speculative." Zuver 153 Wn.2d at 312.

### (5) Termination or Modification by Pinnacle

Czerwinski contends that the provision allowing Pinnacle to terminate or modify the Arbitration Agreement is substantively unconscionable. Issue Resolution Rule 19, "Termination or Modification of Issue Resolution Agreement or Issue Resolution Rules," states:

> In general, the parties agree that the Company may alter or terminate the Agreement and these Issue Resolution Rules on December 31st of any year upon giving 30 calendar days written notice to Employees, provided that all claims arising shall be subject to the Agreement and corresponding Issue Resolution Rules in effect at the time the Arbitration Request Form is submitted and filing fee paid. In addition, any party may elect to waive enforcement of any of these Rules, so long as that waiver works to benefit the other party or parties in the arbitration.

"A unilateral provision in an arbitration agreement is substantively unconscionable only if it is shown that 'the disputed provision is so 'one-sided' and 'overly harsh' as to render it unconscionable.' " Satomi, 167 Wn.2d at 815 (quoting Zuver, 153 Wn.2d at 319 n.18). Here, the provision is unilateral, giving Pinnacle the sole ability to modify or terminate the Arbitration Agreement. However, Czerwinski has not shown that the clause is so "one-sided" and "overly harsh" as to render it substantively unconscionable. The provision requires Pinnacle to give 30 days' written notice to employees if it decides to alter or terminate the Arbitration Agreement. Critically, the agreement provides that any claim be subject to the terms of the Arbitration Agreement and Issue Resolution Rules "in effect at the time the Arbitration

18

Request Form is submitted." We conclude the modification and termination provision is not substantively unconscionable.

Severance

Pinnacle argues that if the provision to terminate or modify the Arbitration Agreement and the confidentiality provision are substantively unconscionable, they do not pervade the Arbitration Agreement and are severable. Pinnacle asserts the court may strike unconscionable provisions under the severability clause of the Arbitration Agreement. Czerwinski contends the unconscionable provisions render the Arbitration Agreement unenforceable.

" 'Severance is the usual remedy for substantively unconscionable terms' " unless " 'such terms pervade an arbitration agreement.' " Woodward, 192 Wn. App. at 602[11] (quoting Gandee, 176 Wn.2d at 603). "Courts are generally loath to upset the terms of an agreement and strive to give effect to the intent of the parties." Zuver, 153 Wn.2d at 320. Where parties have agreed to a severability clause, "courts often strike the offending unconscionable provisions to preserve the contract's essential term of arbitration." Zuver, 153 Wn.2d at 320. We conclude the confidentiality provision does not pervade the Arbitration Agreement. We strike the provision of the Arbitration Agreement on confidentiality but conclude the Arbitration Agreement is enforceable,

---

[11] Internal quotation marks omitted.

No. 79665-8-I/20

reverse denial of the motion to compel arbitration, and remand to enter an order to compel arbitration.

WE CONCUR: